# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

TRISTRATA TECHNOLOGY, INC.        )
                                )
          Plaintiff,        )
                                )
      vs                    )       Civil Action No. 06-652-JJF
                                )
EMULGEN LABORATORIES, INC.        )
DOCTOR'S DERMATOLOGIC FORMULA    )
AND BORLIND OF GERMANY, INC.       )
                                )
          Defendants.      )

## DEFENDANT EMULGEN LABORATORIES, INC.'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

YOUNG CONAWAY STARGATT
 & TAYLOR, LLP

Karen E. Keller (No. 4489)
The Brandywine Building
100 West Street, 17th Floor
Wilmington, DE 19801
(302)571-6600
kkeller@ycst.com

Ronald A. Stearney, Jr.
Law Offices of Ronald A. Stearney
211 W. Wacker Drive, Suite 500
211 W. Wacker Drive, Suite 500
Chicago, IL 60606
312-456-6900
ron@stearneylaw.com

Dated: May 16, 2007

# TABLE OF CONTENTS

Page

I.    SUMMARY OF ARGUMENT…………………………………………...  1

II.   RESPONSIVE FACTS…………………………………………………  1

III.  ARGUMENT ………………………………………………………………3

      A.    DELAWARE'S LONG-ARM STATUTE DOES NOT ALLOW
            FOR THE EXERCISE OF PERSONAL JURISDICTION
            OVER EMULGEN…………………………………….……………3

            1.    Section 3104(c)(1)……………………………………… 3
            2.    Section 3104(c)(3)……………………………………… 6

      B.    EXERCISE OF JURISDICTION WOULD BE IMPROPER
            UNDER THE DUE PROCESS CLAUSE OF THE UNITED
            STATES CONSTITUTION…………………………….………..7

            1.    There Is No Evidence That Emulgen Purposely
                  Targeted Marketing Efforts And Its Website Does
                  Not Support A Finding Of Jurisdiction…………..………..8
            2.    The Exercise Of Jurisdiction Over Emulgen By The
                  District Of Delaware Is Not Fair Or Reasonable…..………9

      C.    TRANSFER OF THIS MATTER TO THE NORTHERN
            DISTRICT OF ILLINOIS IS APPROPRIATE…………....……..11

            1.    Private Factors…………………………………………11
            2.    Public Factors…………………………………………13

IV.   CONCLUSION………………………………………………………..14

i

# TABLE OF AUTHORITIES

Page

**Cases**

*Alcan Aluminum Corp. v. U.S.*,
　165 F.3d 898 (Fed. Cir. 1999) ............................................................................... 11

*American Bio Medica Corporation v. Peninsula Drug Analysis Co., Inc.*,
　C.A. No. 99-218-SLR, 1999 WL 615175 (D. Del. Aug. 3, 1999) ........................... 8

*Applied Biosystems, Inc., v. Cruachem, Ltd.*,
　772 F. Supp. 1458 (D. Del. 1991) ............................................................................ 4

*Beverly Hills Fan Co. v. Royal Sovereign Corp.*,
　21 F.3d 1558 (Fed. Cir. 1994) ...................................................................... 6, 7, 9

*Fischer v. Hilton*,
　549 F. Supp. 389 (D. Del. 1982) ............................................................................. 4

*Intel Corp. v. Broadcom Corp.*
　167 F. Supp. 2d 692 (D. Del. 2001) .................................................................... 5, 6

*Joint Stock Soc. Trade House of Descendants of Peter Smirnoff v. Heublein, Inc.*,
　936 F. Supp. 177 (D. Del. 1996) ........................................................................ 6, 7

*Moore v. Little Giant Industries, Inc.*,
　513 F. Supp. 1043 (D. Del. 1981) ........................................................................... 4

*Motorola Inc. v PC-Tel. Inc.*,
　58 F. Supp. 2d 349 (D. Del. 1999) ........................................................................ 13

*Nilssen v. Osram Sylvania,*,
　C.A. No. 00-695-JJF, 2001 WL 34368395 (D.Del. May 1, 2001) .................... 12, 13

*Optical Recording Corp, v. Capital-EMI Music, Inc.*,
　803 F. Supp. 971 (D. Del. 1992) ........................................................................... 13

*Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.*,
　6 F. Supp. 2d 349 (D.N.J. 1998) ...................................................................11, 12, 13

*Padcom, Inc. v. Netmotion Wireless, Inc.*,
　C.A. No. 03-983-SLR, 2004 WL 1192641 (D. Del. May 24, 2004) ........................ 8

*Pierce v. Hayward Industries, Inc.*,
　C.A. No. 05-5322, 2006 WL 3242274 (E.D. Pa. Nov. 6, 2006) ......................... 8, 9

*Sears, Roebuck & Company v. Sears*,
　744 F. Supp. 1289 (D. Del.1990) ..................................................................... 3, 4, 7

*Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*,
　395 F.3d. 1275 (Fed. Cir. 2005) ......................................................................... 5, 9

*United States Golf Ass'n v. U.S. Amateur Golf Ass'n,*
    690 F. Supp. 317 (D.N.J. 1988) ............................................................... 8

*Waters v. Deutz Corp.,*
    460 A.2d 1332 (Del. Super. Ct.1983) ........................................................ 3

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,*
    952 F. Supp. 1119 (W. D. Penn. 1997) ................................................. 5, 9

**Statutes**

Fed. R. Civ. P. 12(b)(2) ........................................................................... 14

Fed. R. Civ. P. 12(b)(3) ........................................................................... 14

Fed. R. Civ. P. 12(b)(4) ........................................................................... 14

Fed. R. Civ. P. 12(b)(5) ........................................................................... 14

I.      **SUMMARY OF ARGUMENT**

Plaintiff makes no claims of general jurisdiction, but wants this Court to find specific personal jurisdiction over Emulgen based on $386.00 in sales in Delaware, a non-interactive web site and an e-mail campaign conducted by a third-party vendor that was not targeted or directed to Delaware. Plaintiff's attempts to bootstrap web site litter that accumulates on the internet over time by third party repostings is irrelevant because Emulgen has no control over what other people post on the internet.

Plaintiff is also is without basis for asserting that venue is more appropriate here as opposed to in Illinois. Its affiant, a director of TTI, resides and works in New Jersey and the inventors on the allegedly infringed patents reside in Pennsylvania. Its lawyers reside in Chicago and New York. Plaintiff makes no showing as to why the Delaware forum is more convenient when it must import all of its witnesses and lawyers from other states, including Illinois.

II.     **RESPONSIVE FACTS**

Before refuting the additional facts raised by Plaintiff in its attachments, Emulgen must clarify two complete distortions of the record. First, Emulgen did not conduct a direct marketing campaign to Delaware as Plaintiff asserts. A careful reading of Emulgen's affidavit makes it clear that Emulgen did not target Delaware with any campaigns whatsoever. Dr. Banerjee's affidavit clearly states that while he did contract with a company for e-mail solicitations, the campaign was not directed at Delaware and Dr. Banerjee has no way of knowing how many people were Delaware residents. (Banerjee affidavit at Paragraph 3). Second, there is no evidence that Emulgen's web site was "interactive."

As for Plaintiff's additional facts, Emulgen has nothing to do with the companies whose web sites are attached to Plaintiff's brief. (Affidavit of Dr. Santimoy Banerjee attached as

1

Exhibit A).  In the interest of full disclosure, and in order to head off any further suppositions, Emulgen states that it did do business with Jevene, a California customer.  Jevene took Emulgen's product and rebranded it under its own label.  The last shipment to Jevene occurred three years ago.  Emulgen has no idea who Jevene's customers are or where those products were sold.

Emulgen has no idea what "Eximpact" is other than what it shows on the web site. Emulgen has made no known sales to Eximpact and is not affiliated with that company. Emulgen does not have any ownership or control over Eximpact.  The only web site owned and operated by Emulgen has been deactivated in response to Plaintiff's claims.  The facts stated in the opening memorandum still stand and Emulgen still has no contacts with Delaware.

Finally, Plaintiff's affidavit of a member of its board of directors demonstrates that Delaware is just as inconvenient a forum as Illinois.  First, the affiant works in Princeton, New Jersey and resides in that state as well.  (D.I. 20 Affidavit of Mark Steele, Para. 3).  Steele further states that Plaintiff is a Delaware corporation and that it is the assignee of the patents.  (*Id.* at 4). Drs. Yu and Van Scott, the patent inventors, reside in Pennsylvania and are employees of NeoStrata Co., Inc.  (*Id.* at Para. 6).  Other than alleging that it maintains its corporate records in Delaware, Steele does not state how many employees who would be witnesses actually reside in Delaware.  Steele also does not state what operations the assignee carries on in Delaware.  What is clear is that Steele, presumably selected because he is the most knowledgeable about these matters and would testify at trial, does not live or work in Delaware.

In short, there is no evidence presented by the Plaintiff to demonstrate that it has nothing more than a paper presence in Delaware despite its unsupported assertion that it has a strong presence here.  Although Plaintiff makes it a point that Drs. Yu and Van Scott are too elderly to

travel, the affidavit is silent as to this fact.  (D.I. 20 Answering Brief at Page 2).  Moreover, Plaintiff does not dispute the fact that all of its counsel (with the exception of local counsel which is mandatory by rule) are out of state with the principal litigators being located just blocks from Emulgen's counsel's office in Chicago.

## III.    ARGUMENT

Plaintiff asserts that specific personal jurisdiction lies in this case.  The specific acts which Plaintiff argues are of vital importance to the state of Delaware and which allegedly warrant Court's involvement are three sales amounting to $386.60 or slightly more than the filing fee of this action.  The additional web sites submitted by Plaintiff are not controlled by Emulgen and are therefore irrelevant to the inquiry into specific personal jurisdiction.

### A.    DELAWARE'S LONG-ARM STATUTE DOES NOT ALLOW FOR THE EXERCISE OF PERSONAL JURISDICTION OVER EMULGEN.

Neither of Plaintiff's claims of jurisdiction under sections 3104(c)(1) (transacts business in state) and 3104(c)(3) (single act which causes injury) are sufficient to exercise personal jurisdiction.

#### 1.    Section 3104(c)(1)

Plaintiff argues that Emulgen's web site and its three sales are sufficient to establish specific jurisdiction and that the minimal nature of the sales is of no import.  In order to meet the requirements of transacting business under § 3104(c)(1), an act must be *directed* at residents of the state of Delaware and the protection of its laws.  See *Sears, Roebuck & Company v. Sears*, 744 F. Supp. 1289, 1292 (D. Del.1990) .  Mere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware.  *See Waters v. Deutz Corp.*, 460 A.2d 1332, 1335 (Del. Super. Ct.1983) (mere solicitation insufficient; marketing activities must be

sufficiently important such that the foreign corporation would perform similar operations in absence of representative); *Moore v. Little Giant Industries, Inc.*, 513 F. Supp. 1043, 1047 (D. Del.1981) (shipment of ladder into Delaware, where neither solicitation, filing of the purchase order, nor payment occurred in Delaware, does not constitute transacting business); *Applied Biosystems, Inc., v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1467 (D. Del.1991) (isolated incident of shipment of samples not transacting business); *Fischer v. Hilton*, 549 F. Supp. 389, 391 (D. Del. 1982) (sale of a defective truck by an out of state resident to a Delaware resident did not satisfy 3104(c)(1)).

Here, the three sales were secured via a third party vendor using broadcast emails. The emails were not directed to Delaware, but at the e-mail addresses which have no relevant, legal citizenship characteristics. As established by the *Sears* court, non-directional advertising does not place a company into the forum state. *Sears*, 744 F. Supp. at 1293-94 ("vague assertions that promotional materials may have been sent to Delaware, without any documentation of the number of such mailings, what they promoted, whether they actually reached Delaware, ... are to be given little weight in the personal jurisdiction analysis.") Plaintiff does not allege that the third party vendor is an agent of Plaintiff thereby breaking the causal connection required to secure jurisdiction under this clause of the long arm statute. However, even if the Plaintiff were to allege that the third party vendor was acting as an agent of Emulgen, the e-mails were not directed to Delaware. In addition, the authority cited above sets forth that random transactions do not rise to "transacting business" in Delaware. Additionally, whatever purchases were made by Delaware residents were done so outside of the state of Delaware. The shipping of the product to Delaware by common carrier is insufficient to establish jurisdiction under 3104(c)(1). *See Cruachem* and *Fischer*, *supra*.

Finally, Plaintiff's assertion that a web site is a basis for jurisdiction is false. The Plaintiff predominantly relies on *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W. D. Penn. 1997), but that case has been called into question by the Federal Circuit and other courts. *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d. 1275 (Fed. Cir. 2005). In *Trintec*, the patent holder based its jurisdiction on two facts; actual sales and an interactive web site. The *Trintec* court noted that a web site that is directed at customers throughout the country does not show a persistent course of conduct within the district. *Id.* at 1281. The *Trintec* court also noted that other courts have adopted the position that mere presence of a web site is insufficient on its own to establish personal jurisdiction. Similarly, the availability of an infringer's products on other web sites does not support jurisdiction unless the infringer controls those sites. *Id.* Finally, the *Trintec* court questioned whether one-tenth of one percent of the infringer's total sales was "sufficiently substantial to support personal jurisdiction." *Id.*

While the *Trintec* court ultimately sent the matter back for further findings, it is clear indication that Plaintiff's view of the law in absolute terms is not well founded. Unlike in *Trintec*, it is clear in this case that the sales in question were derived not from Emulgen's web site thereby removing that from the equation. It is also clear that the various sites that Plaintiff attached to its Response, which are not controlled or affiliated with Emulgen, are not to be considered. The rational basis for such an interpretation is that any other interpretation would lead to findings of personal jurisdiction based on a hyperlink on a third-party's web site. Indeed, that is what Plaintiff urges this Court to find in this case.

Plaintiff's reliance on *Intel Corp. v. Broadcom Corp.*, 167 F. Supp. 2d 692 (D. Del. 2001) is misplaced. The *Intel* court found that the defendant had a long history with Delaware

customers and that Broadcom targeted sales to Delaware customers. This is different then the situation here where the three sales were secured as a result of a third party vendor's broadcast e-mails. The e-mails, unlike the sales calls of the Broadcom's employees, were not directed to Delaware residents. The *Intel* court also found a business strategy to transact business in Delaware. No such facts exist here.

### 2.    Section 3104(c)(3)

That leaves only Section 3104(c)(3), or single injury provision, as the basis for jurisdiction. Plaintiff cites to the line authority that sales occurring in the State of Delaware of infringing product automatically trigger personal jurisdiction. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). Although recognizing essentially that the decision could go both ways with respect to whether a purchase of an infringing product triggers the single act requirement, in the interest of judicial efficiency, the Federal Circuit adopted the position that for purposes of patent law, the injury occurs where the product is sold. As part of the rationale for its decision, the *Beverly Hills* court relied on its assessment that other fields of intellectual property law subscribe to this notion.

However, *Beverly Hills* and its progeny have developed an iron clad approach that deprives states of the ability to interpret their own statutes by supplanting federal law where state law otherwise should control. There is no question that *Beverly Hills* contradicts the decisions of other courts interpreting similar factual circumstances in non-patent cases. For example, in *Joint Stock Soc. Trade House of Descendants of Peter Smirnoff v. Heublein, Inc.*, 936 F. Supp. 177 (D. Del. 1996), the court held that in order for a defendant to commit an act in Delaware and be subject to subsection (c)(3) of the Delaware long-arm statute, the defendant, or an agent of the defendant, must be present in Delaware when the deed is done. The district court did not find

that personal jurisdiction existed over a third party defendant under Section 3104(c)(3) in a trade libel and Lanham act case.  The *Heublin* court relied, in part, on the decision in *Sears* wherein the district court failed to exert jurisdiction based upon the mailing of promotional materials into Delaware.  *Sears*, 744 F. Supp. at 1294.

These decisions demonstrate that the mechanical approach of automatically finding singe act jurisdiction in patent cases conflicts with the interpretation of Delaware's long arm statute. Indeed, the *Sears* court noted that to take out the "act in Delaware" requirement out of subsection (c)(3) would eliminate the distinction between (c)(3) (single act, specific jurisdiction) and (c)(4) (general jurisdiction).  In essence, while the Plaintiff argues that this Court has specific personal jurisdiction under the single act requirement, it is essentially converting it to a general jurisdiction case through the *Beverly Hills* case.  The law contradicts itself and in doing so, deprives Delaware of its ability to interpret its own authority.  More to the point, the Plaintiff argues that this Court has jurisdiction under state law, but then relies on federal authority to trump that very same law.  Essentially, what *Beverly Hills* stands for is the proposition that the patent laws pre-empt all state laws concerning jurisdiction and this is inappropriate since that case does not provide authority or analysis as to why pre-emption should lie.

## B. EXERCISE OF JURISDICTION WOULD BE IMPROPER UNDER THE DUE PROCESS CLAUSE OF THE UNITED STATES CONSTITUTION.

Regardless of whether the Federal Circuit provides the sole source of authority on jurisdictional questions, the Supreme Court's decisions regarding jurisdiction are still binding and good precedent.

###### 1.    There Is No Evidence That Emulgen Purposely Targeted Marketing Efforts And Its Website Does Not Support A Finding Of Jurisdiction.

First, Plaintiff argues that Emulgen directly solicited Delaware residents, but this is not true. Emulgen retained a third party vendor who issued the e-mail solicitations to a group of e-mail addresses not associated by state. Plaintiff does not argue that the vendor's actions create an agency relationship for purposes of jurisdiction and there is no basis to assert that Delaware was targeted. The issue of the web site is also insufficient to exert constitutionally acceptable jurisdiction since no orders were procured by the web site. The Plaintiff's authority does not support its assertions under these facts.

In *United States Golf Ass'n v. U.S. Amateur Golf Ass'n*, 690 F. Supp. 317, 320 (D.N.J. 1988) the court held that direct mail advertising was a sufficient basis to establish personal jurisdiction and satisfy Constitutional muster. However, direct mail advertising is completely different than broadcast e-mails since you must specify an address and the sender must know that he is sending mail into the forum state. With an e-mail address, the sender has no idea as to the recipient's physical location. Arguably, an e-mail address cannot be tied to a physical location. Many of Plaintiff's cited cases can be distinguished on this basis. In *American Bio Medica Corporation      v.      Peninsula      Drug      Analysis      Co.,      Inc.*, C.A. No. 99-218-SLR, 1999 WL 615175 (D. Del. Aug. 3, 1999) (Ex. B), the court found a concerted sales campaign and that direct mail advertising was used. In *Padcom, Inc. v. Netmotion Wireless, Inc.*, C.A. No. 03-983-SLR, 2004 WL 1192641 (D. Del. May 24, 2004) (Ex. D), the product in question was software which could be downloaded from the defendant's interactive web site. This is distinguishable from the facts here since one cannot download skin crème from a web site. In other words, the web site itself is an integral part of the product delivery. Additionally, the defendant contacted Delaware residents by mail. In *Pierce v.*

*Hayward Industries, Inc.*, C.A. No. 05-5322, 2006 WL 3242274 (E.D. Pa. Nov. 6, 2006) (Ex. E), the court dismissed for lack of jurisdiction.

Regarding the web site, as argued above, *Zippo Mfg. Co.* can no longer be considered to stand for the proposition that a web site that is accessible anywhere in the United States means *ipso facto* that the owner can be hailed into any court.  *See Trintec*, *supra*.  The evidence here is that no recent sales to Delaware residents occurred as a result of the web site.  All occurred through the third-party vendor's marketing campaign.

> **2.     The Exercise Of Jurisdiction Over Emulgen By The District Of Delaware Is Not Fair Or Reasonable**.

The question ultimately turns on whether the sales made through a third party vendor are a sufficient basis to adjudicate the patent infringement claim in Delaware and comply with the Due Process Clause.  Plaintiff argues that Delaware has a clear interest in adjudicating the dispute, but that is not consistent with the interpretation of its long arm statute with respect to non-patent claims.  It is not necessarily the State of Delaware which wants to hear this claim, but rather the Federal Circuit which mandates that the State of Delaware hear this claim.  As argued above, the decision in *Beverly Hills Fan Co.* usurps the state's authority to interpret its own statutes.  The holdings cited above with respect to Delaware's long arm statute indicate that Delaware has less than a compelling interest in adjudicating this claim.

The Plaintiff also asserts that Delaware's residents (i.e., Plaintiff) needs a convenient forum for redressing is injuries.  However, Plaintiff does not fall into the class of litigants in need of injuries inflicted by out of state actors.  Plaintiff is a paper corporation whose only duties are to handle the licensing of its master, Neostrata, Inc.  Plaintiff does not state how many employees it has in Delaware, but what is clear is that of the ones it mentions, none are located in Delaware.  In fact, Plaintiff's affiant lives and works in New Jersey and its other principal

witnesses live in Pennsylvania.  Finally, Plaintiff's choice of counsel is not in Delaware, but in the states of New York and Illinois.  Plaintiff is in no need of having its claims heard in Delaware.  The only factor which Plaintiff stresses is its success record in Delaware courts, but this is not legally relevant for jurisdictional purposes.  Plaintiff offers no authority for its assertions that this Court, having dealt with Plaintiff in several cases, is the default court for all patent claims that Plaintiff may have.  No one is entitled to a particular judge under the Constitution.  Additionally, Plaintiff has demanded a jury so clearly it is going to have to educate the trier of fact anew regardless of how many times it goes to trial on its patent claims in Delaware.

Plaintiff also argues that the *de minimis* quantity and quality of sales does not matter because that only applies to a general jurisdiction analysis, but that does not restrict this Court from analyzing that factor with respect to the notions of fair play and justice required for Due Process compliance.  The overarching principle here is *de minimis non curat lex* which even the Federal Circuit has acknowledged applies to all statutes.

> As the Supreme Court stated in *Wisconsin Department of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 231, 112 S.Ct. 2447, 120 L.Ed.2d 174 (1992), "de minimis ... is part of the established background of legal principles against which all enactments are adopted, and ... which all enactments are deemed to accept." As such, courts have recognized this principle in a wide variety of statutory contexts. See, e.g., *Republic of Argentina v. Weltover*, 504 U.S. 607, 618, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992) ("Of course the generally applicable principle *de minimis non curat lex* ensures that jurisdiction may not be predicated on purely trivial effects in the United States."); *Hudson v. McMillian*, 503 U.S. 1, 9-10, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) ("The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind" (internal quotations omitted).); *Ingraham v. Wright*, 430 U.S. 651, 674, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977) ("There is, of course, a de minimis level of imposition with which the Constitution is not concerned."); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) ("The de minimis rule can doubtless be applied to much of the [allegedly compensable time walking to and

> from the time clock on the employer's premises] involved in this case."). De
> minimis is no less firmly entrenched in the law regarding imported goods,
> resulting in, for example, holdings that "[g]oods more than 98 per cent jute are to
> be regarded [for the purposes of customs classification] as articles composed of
> jute," *Overton & Co. v. United States*, 5 U.S.Cust.App. 183, 187 (1914), that less
> than six percent flour in fish cakes was insufficient to allow classification as
> "vegetables with fish," see *B. Westergaard & Co. v. United States*, 19 C.C.P.A.
> 299, 304, 1932 WL 2218 (1932), that a chemical component be present in a
> "significant quantity" to render the mixture "in part of" that component, see
> *United States v. Cavalier Shipping Co., Inc.*, 60 C.C.P.A. 152, 478 F.2d 1256,
> 1258 (1973), and that dumping margins of less than 0.50 percent are to be
> ignored, see *Washington Red Raspberry Comm'n v. United States*, 859 F.2d 898,
> 902-03 (Fed. Cir. 1988).

*Alcan Aluminum Corp. v. U.S.*, 165 F.3d 898, 902-903 (Fed. Cir. 1999). Here, the claim

of jurisdiction is predicated upon less than $400 in sales. Under any other analysis, this

would be considered a small claims action, but here, the Plaintiff seeks to imbue it with

Article III standing. In assessing whether the traditional notions of fair play and

substantial justice are given their due, the Court should consider the minimal amount of

the alleged transgression in question in order to determine whether the State of Delaware

has a substantial interest in this case. Emulgen asserts that another forum would have a

much stronger connection.

## C.    TRANSFER OF THIS MATTER TO THE NORTHERN DISTRICT OF ILLINOIS IS APPROPRIATE.

It appears that the parties are in agreement that the Third Circuit's factors in determining

venue apply.

### 1.    Private Factors

Plaintiff asserts that its choice of forum is to be given paramount consideration, but the

choice is not dispositive. *Osteotech, Inc. v. Gensci Regeneration Sciences, Inc.*, 6 F. Supp. 2d

349, 357 (D.N.J. 1998). Additionally, in patent cases, the general rule is that the preferred forum

is the *center of gravity* of the accused activity. *Id.* Here, the center of gravity is not in Delaware. If anywhere, it is in Illinois. Plaintiff cannot seriously suggest that the few hundred dollars of sales in Delaware is the center of gravity in this dispute. As stated above, the Court's familiarity with Plaintiff's litigious activity is not a factor to be considered. Were that the case, then frequent filers would create a perpetual venue in a particular court. Plaintiff also does not have a strong connection to Delaware. While it is incorporated here, it admits, implicitly, that its headquarters are in New Jersey. Plaintiff proffers no evidence that its major operations or any work at all occurs in Delaware.

Second, Plaintiff's claims that all of its documents and witnesses are in Delaware are not true. Of the witnesses mentioned, everyone is located out of state including the employees of Neostrata, Inc. which is located in Princeton, New Jersey. As for Drs. Yu and Van Scott, Plaintiff does not allege that they are too infirm to testify, just that it would be a burden. But all of this is irrelevant as all are employees of the Plaintiff. As noted in *Nilssen v. Osram Sylvania*, C.A. No. 00-695-JJF, 2001 WL 34368395 (D. Del. May 1, 2001) (Ex. B) , cited by Plaintiff, employees of the parties should not be considered.

Litigation is burdensome on all parties, but the question is whether the burden on Emulgen is greater than on Plaintiff. Here, Emulgen is a one man show. Subjecting Dr. Banerjee to trial in Delaware will tax his resources beyond the breaking point. Plaintiff glibly asserts that it is nothing to buy a few plane tickets, but that is just a cute statement. Without making wild assumptions, we do know that Plaintiff has millions of dollars in assets since it frequently refers to its successes in litigating these cases. On balance, Plaintiff's resources outnumber Emulgen's by an infinite multiple. Plaintiff is also paying its attorneys in New York and in Chicago so there is no question that it is mobile. Finally, Plaintiff asserts that Emulgen

has the resources to defend this action because it secured counsel in Illinois, its home state, and in Delaware, but this too is silly. Plaintiff knows that the local rules of this district mandate a local counsel. Emulgen's choices were to either comply or face default. Emulgen is entitled to meet its counsel face to face to discuss its case. Were it to have retained counsel solely in Delaware, it would be forced to shuttle back and forth in order to meet with its lawyer. Meanwhile, Plaintiff has chosen Chicago lawyers for its own counsel. As far as burden goes, the balance tilts in Emulgen's favor. In *Osteotech*, the court noted that the impact of the litigation would be greater on the defendant than on the plaintiff due to defendant's small size. *Id.* at 359. The same rationale should apply here.

### 2.    Public Factors.

Plaintiff asserts that the instant Court's familiarity with the patents at issue strongly weighs in its favor, but none of the cases cited by it state this for a fact. In *Optical Recording Corp, v. Capital-EMI Music, Inc.*, 803 F.Supp. 971 (D. Del. 1992), the primary concern was the "first filed rule". It appears that the decision in that case rested on the fact that one forum had previously interpreted the patents at issue while the other had not. Additionally, the litigation had gone further in the Delaware court than in the New York court. In *Nilssen*, the other case cited by the Plaintiff, the court transferred the case for multiple reasons and not solely based on the location of patent litigation in another forum. Specifically, the court noted that the relative economic burden controls and that a multi-million dollar company is more capable of shouldering litigation costs than a small company such as Emulgen. *Nilssen*, 1001 WL 34368395 (citing *Motorola Inc. v PC-Tel. Inc.*, 58 F. Supp. 2d 349, 358 (D. Del. 1999)). Plaintiff provides no other basis on which continued litigation in Delaware serves the public interest.

## V.    CONCLUSION

For the foregoing reasons, Defendant EMULGEN LABORATORIES, INC. requests that

this Court dismiss this action pursuant to Fed. R. Civ. P. 12(b)(2), 12(b)(4) or 12(b)(5) or to

transfer to the Northern District of Illinois pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C.

1400(a).

DATED: May 16, 2007                       YOUNG CONAWAY STARGATT
                                              & TAYLOR, LLP


                                          /s/ *Karen E. Keller*
                                          Karen E. Keller (No. 4489)
                                          The Brandywine Building
                                          1000 West Street, 17th Floor
                                          Wilmington, DE 19801
                                          (302) 571-6600
                                          kkeller@ycst.com
                                          *Attorneys for Defendant Emulgen*
                                              *Laboratories, Inc.*

OF COUNSEL:
Ronald A. Stearney, Jr.
Law Offices Of Ronald A. Stearney
211 W. Wacker Drive, Suite 500
Chicago, IL 60606
312-456-6900
ron@stearneylaw.com

## CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on May 16, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

>Arthur G. Connolly, III, Esquire
>Connolly Bove Lodge & Hutz LLP
>1007 North Orange Street
>P.O. Box 2207
>Wilmington, DE 19899

I further certify that on May 16, 2007, I caused a copy of the foregoing document to be served by hand delivery on the above-listed counsel of record and on the following in the manner indicated:

>**BY FACSIMILE AND U.S. MAIL**
>
>Michael O. Warnecke, Esquire
>Debra Rae Bernard, Esquire
>Douglas L. Sawyer, Esquire
>Aric S. Jacover, Esquire
>MAYER, BROWN, ROWE and MAW LLP
>71 South Wacker Drive
>Chicago, IL  60606
>(Fax: 312-701-7711)

>YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
>*/s/ Karen E. Keller*
>Karen E. Keller (No. 4489)
>The Brandywine Building
>1000 West Street, 17th Floor
>Wilmington, Delaware  19801
>(302) 571-6600
>kkeller@ycst.com
>*Attorneys for Defendant Emulgen Laboratories, Inc.*

# EXHIBIT A

## AFFIDAVIT OF SANTIMOY BANERJEE, PhD.

The undersigned affiant, under penalties of perjury, does hereby state and attest under oath, that if he was called to testify in this matter, would testify consistent with the following:

1.    At the request of my lawyer, I have been directed to two websites: www.jeven.com and http://sa.eximpact.com.  Neither of these web sites carry my product or my name with my permission.

2.    Of the two companies, I only recognize jeven.  Jeven previously marketed my product under its own name.  I have not and do not to this day market my product under the name "Jeven".  Moreover, the last time I sold any of my product to Jeven for resale was in May of 2004.  No further product has been sold to Jeven.

3.    As for http://sa.eximpact.com, I do not recognize this company and have no knowledge of any sales of my product to them.  I see that there are a multitude of products sold by this company, and I did not see my product listed on the "anti-wrinkle" list.  If I did not know my product name to type into the search engine, I would not be able to find my product on this website.  In fact, when I did type in "Emulgen" into the web site, five sites came up and when I followed the links, I was unable to find my product.

4.    My company cannot afford to employ two lawyers to defend this action as its revenues are insufficient to support myself and these counsel.  I was forced to hire two lawyers because I am told that the Federal Court in Delaware will not allow anyone other than a Delaware lawyer to file in that court.

5.    As a matter of personal confidence and trust, I prefer to meet my lawyer face

to face.  Additionally, it is difficult for me to discuss documents pertaining to

my case over the telephone.  Finally, I am told that there are only a few

thousand lawyers in Delaware.  In researching patent and trademark lawyers

*on the internet, I see that the majority are employed by the law firm that*

represents Tristrata.  Other attempts to hire local counsel have resulted in

conflicts as well.


**FURTHER AFFIANT SAYETH NAUGHT**

   I declare under penalties of perjury under the laws of the United States of
America that the foregoing is true and correct.

Executed on May 15, 2007


_____
Santimoy Banerjee, PhD.

# EXHIBIT B

Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: 1999 WL 615175 (D.Del.))**

C

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.
AMERICAN BIO MEDICA CORPORATION,
Plaintiff,
v.
PENINSULA DRUG ANALYSIS CO., INC.; James
T. Ramsey; Phamatech, Inc .; Dipro
Diagnostic Products, Inc.; Dipro Diagnostic Products
of North America, Inc.,
Defendants.
**No. Civ.A. 99-218-SLR.**

Aug. 3, 1999.

Daniel F. Wolcott, Jr., Gregory A. Inskip, and Joanne
Ceballos, of Potter, Anderson & Corroon LLP,
Wilmington, Delaware, and Charles Michael Tobin,
of Hopkins & Sutter, Washington, D.C., for plaintiff.

Matthew B. Lehr, and Maryellen Noreika, of Morris,
Nichols, Arsht & Tunnell, Wilmington, Delaware,
and Edward W. Moore, of Dallas, Texas, for defend-
ants Peninsula Drug Analysis Co., Inc.; James T.
Ramsey; DiPro Diagnostic Products, Inc.; and DiPro
Diagnostic Products of North America, Inc., Doreen
L. Costa, Neil P. Sirota, and Steven R. Gustavson, of
Baker & Botts, L.L.P., New York, New York, of
counsel.

Kevin W. Goldstein, of Ratner & Prestia, Wilming-
ton, Delaware, for defendant Phamatech, Inc., Steele
N. Gillaspy, of Gillaspey, Harms & Associates, San
Diego, California, of counsel.

MEMORANDUM OPINION
ROBINSON, J.

I. INTRODUCTION

**\*1** Pending before the court are motions to dismiss or
transfer venue filed by defendants Dipro Diagnostic
Products of North America, Inc. ("Dipro"), Phamat-
ech, Inc. ("Phamatech"), and Peninsula Drug Analys-
is Co., Inc. and James T. Ramsey ("Peninsula" and
"Ramsey," respectively). (D.I. 17, 25 and 49)
Plaintiff  American  Bio  Medica  Corporation

("ABMC") opposes said motions. ABMC owns the
rights to U.S. Design Patent No. D404812, which
patent issued on January 26, 1999. ABMC is a New
York corporation engaged in the manufacture, world-
wide distribution and sale of the Rapid Drug Screen,
a product covered by the patent at issue. According to
ABMC, when the Rapid Drug Screen was developed
in 1995, it was the first vertical, hands free test for
the detection of the presence of drug residue in urine.
Until February 1999, ABMC purchased test strips
from defendant Phamatech for incorporation into the
Rapid Drug Screen. ABMC alleges that Phamatech
initiated production of its own vertical test kit (Quick
Screen) in 1998 or earlier, using proprietary informa-
tion it acquired by reason of its supply relationship
with ABMC.

Defendant Phamatech is a California corporation. Ac-
cording to ABMC, Phamatech distributes Quick
Screen through the auspices of defendants Peninsula
and Ramsey, among others. Defendant Dipro is a
Delaware corporation that, according to ABMC, ac-
quires directly or indirectly from Phamatech an ac-
cused product called Rapid Response and distributes
that product through Peninsula and Ramsey, among
others. Peninsula is a Virginia corporation and Ram-
sey is the sole stockholder and an employee of Penin-
sula.

Plaintiff ABMC initiated this lawsuit on April 7,
1999 against defendants for design patent infringe-
ment, violation of the Lanham Act, and other acts of
unfair competition. A day later, on April 8, 1999,
Phamatech filed suit in the United States District
Court for the Southern District of California seeking
a declaratory judgment that ABMC's design patent is
invalid, and joining other federal and state claims es-
sentially mirroring the claims and operative facts at
issue. By decision issued June 21, 1999, Judge Keep
of the Southern District of California found that the
California court could exercise specific personal jur-
isdiction over ABMC; however, applying the "first-
filed" rule, she stayed the California case pending
disposition of the instant motions.

II. FACTS

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: 1999 WL 615175 (D.Del.))**

The facts are essentially undisputed. Prior to the filing of the complaint, none of the accused products had been sold to a Delaware resident. In the fall of 1998, defendant Peninsula did ship an order of ABMC's Rapid Drug Screen to a Delaware resident, Pace Electric of New Castle, Delaware. Sometime thereafter and prior to January 1999, Peninsula stopped handling ABMC's product. In January 1999, defendant Ramsey and a third party met with a representative of Pace to discuss a possible business relationship for the sale and distribution of the Phamatech/Dipro product, Rapid Response, in Delaware. These discussions took place in Hawaii and Maryland. Although there are averments of record indicating that some agreement was reached (D.I.32), it is the court's understanding that no actual sales or movement of defendants' products occurred in Delaware prior to the filing of the complaint.

**\*2** Prior to April 1999, Peninsula sent direct mail postcards to Delaware as part of a mass mailing to potential customers in more than 20 states. [FN1] Both Ramsey and Phamatech maintain national Internet websites that can be accessed from Delaware. It is the court's understanding that these websites include promotional material about the allegedly infringing products, including information on ordering and shipping; however, orders cannot be consummated directly through the websites.

> FN1. Approximately 60 out of a total of 6,000 postcards were directed to Delaware residents. No responses are recorded.

## III. DISCUSSION

### A. Personal Jurisdiction

ABMC, as plaintiff, bears the burden of establishing that this court may exercise personal jurisdiction over defendants. When personal jurisdiction is contested without the benefit of discovery, the plaintiff need only establish a *prima facie* case with the record viewed in the light most favorable to the plaintiff. *See Applied Biosystems, Inc. v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1462 (D.Del.1991); *Computer People, Inc. v. Best Int'l Group, Inc.,* No. Civ. A. 16648, 1999 WL 288119, at \*4 & n. 5 (Del. Ch. Apr 27, 1999).

There is no question but that this court can exercise personal jurisdiction over defendant Dipro, a Delaware corporation. The focus of the following discussion, therefore, is whether the exercise of personal jurisdiction over the remaining defendants comports with the law of the Federal Circuit. [FN2]

> FN2. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. *Akro Corp. v. Luker,* 45 F.3d 1541, 1543 (Fed.Cir.1995).

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for "lack of jurisdiction over the person." According to the United States Supreme Court,

> before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described in this court as a two-step analysis. The court will determine, first, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendants' rights to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del. C. § 3104(c), has been construed "broadly ... to confer jurisdiction to the maximum extent possible under the due process clause." *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d 764, 768 (Del.1986). As noted by this court in *Intel Corp. v. Silicon Storage Tech., Inc.,* 20 F.Supp.2d 690, 694 (D.Del.1998), "[t]he Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, nor

Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: 1999 WL 615175 (D.Del.))**

does it substitute federal due process analysis for state long-arm analysis." *Accord Hercules, Inc. v. Leu Trust & Banking (Bahamas) Ltd.,* 611 A.2d 476, 480-81 (Del.1992); *Red Sail Easter Ltd. Partners, L.P. v. Radio City Music Hall Prods. Inc.,* Civ. A. No. 12036, 1991 WL 129174, at *3 (Del. Ch. July 10, 1991); *Ramada Inns v. Drinkhall,* No. Civ. A. 83C-AU-56, 1984 WL 247023, at *2 (Del.Super. May 17, 1984). Therefore, the court must determine that the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendants' constitutional rights to due process. [FN3]

> FN3. The Federal Circuit has instructed that, "in interpreting the meaning of state long-arm statutes, we ... defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." *Graphic Controls Corp. v. Utah Med. Prods., Inc.,* 149 F.3d 1382, 1386 (Fed.Cir.1998). Thus, in *Luker,* the Federal Circuit's analysis followed that of the Sixth Circuit's holding in *R.L. Lipton Distrib. Co. v. Dribeck Importers, Inc.,* 811 F.2d 967 (6th Cir.1987): " 'This Ohio [long-arm] statute has been construed to extend to the outer limits of due process, and thus an Ohio personal jurisdiction analysis becomes an examination of constitutional limitations." ' *Luker,* 45 F.3d at 1544 (quoting *Dribeck,* 811 F.2d at 969). By contrast, as noted above, the Delaware state courts do not collapse the long-arm inquiry into the due process inquiry and neither shall this court.

*3 Delaware's long-arm statute provides:

(c) As to a cause of action brought by a person arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-resident, or his personal representative, who in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

(3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside of the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State....

Del.Code Ann. tit. 10, § 3104(c)(1)-(4).

As explained by the Delaware Supreme Court in *LaNuova,*

[t]he conduct embraced in subsections (1) and (2), the transaction of business or performance of work and contracting to supply services or things in the State, may supply the jurisdictional basis for suit only with respect to claims which have a nexus to the designated conduct. Where personal jurisdiction is asserted on a transactional basis, even a single transaction is sufficient if the claim has its origin in the asserted transaction.

* * *

Similarly, where the claim is one for tortious injury under subsection (c)(3),

a single "act or omission" in the State in which the injury was caused will suffice. Such a claim may also be viewed as transactional.

*LaNuova,* 513 A.2d at 768. Therefore, in order to establish transactional or specific jurisdiction, plaintiff must demonstrate not only that an act or acts occurred in Delaware but also that its causes of action arise from those act or acts. According to relevant caselaw, plaintiff also must demonstrate that the act or acts occurring in Delaware actually constitute "transacting business" in Delaware, i.e., that defendants "purposefully avail[ed themselves] of the privileges and benefits of Delaware law." *Computer People, Inc.,* 1999 WL 288119, at *8; *see also Thorn EMI N. Am. v. Micron Tech., Inc.,* 821 F.Supp. 272, 274 (D.Del.1993) (stating that the designated conduct "must be directed at residents of the State of Delaware and the protection of its laws"). With this requirement in mind, courts have concluded that "[m]ere solicitation does not arise to transacting business, nor does the isolated shipment of goods into Delaware." *Id.* (citing *Moore v. Little Giant Indus., Inc.,* 513 F.Supp. 1043, 1047 (D.Del.1981); *Waters v.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
(Cite as: 1999 WL 615175 (D.Del.))

*Deutz Corp.,* 460 A.2d 1332, 1335 (Del.Super.1983). The distinction between isolated business activities and those giving rise to personal jurisdiction has been explained on the basis of whether the conduct is "part of a general business plan ... to solicit business in Delaware and deliver products to customers in Delaware." *Thorn EMI,* 821 F.Supp. at 274.

**\*4** Plaintiff alleges in its complaint seven causes of action, including unlawful use of the trademarks and service marks of the Rapid Drug Screen in violation of the Lanham Act and common and state law trademark rights; violation of the design patent "by making, using and/or selling the ABMC design ..."; and engaging in unfair competition and deceptive trade practices. (D.I.1) Although the products at issue have not been made, used, or sold in Delaware, plaintiff asserts that, "[t]hrough offers and extensive planning to sell the infringing product in Delaware, defendants have engaged in a course of conduct that readily meets the nexus requirements of sections 3104(c)(1), (2), and (3)." (D.I. 57 at 7-8)

The record demonstrates that defendants Peninsula and Ramsey have offered to sell [FN4] allegedly infringing products to Delaware residents through what appears to be a concerted marketing effort. The marketing effort includes national advertisements accessible to Delaware residents (the internet website), out-of-state sales negotiations with a Delaware resident, [FN5] and the mailing of promotional materials to Delaware residents. Given the history of these defendants' relationship with plaintiff, the record adequately demonstrates that these activities are directed at Delaware residents, constitute "transacting business," and are sufficiently related to plaintiff's causes of action to satisfy the requirements of 10 Del. C. § 3104(c)(1). [FN6] *Cf. Computer People, Inc.,* 1999 WL 288119, at \*8. [FN7]

> **FN4.** Plaintiff did not specifically allege such in its complaint; however, 35 U.S.C. § 271(a) reads "whoever without authority makes, uses, offers to sell, or sells any patented invention ... infringes the patent." (Emphasis added)
>
> **FN5.** The out-of-state sales negotiations

with Pace Electric are viewed in tandem with defendants' other conduct as evidence of a general business plan directed at Delaware residents and the protection of its laws.

> **FN6.** As noted, the court is satisfied that the activities described above are "part of a general business plan" and not isolated, unrelated events. In the past, this court has demanded as well proof that the activities have had a "tangible effect" in Delaware. *See,* e.g., *Intel Corp.,* 20 F.Supp. at 696 ("... SST's solicitations in Delaware [have not] been shown to have had any tangible effect on Intel's sales here."). Sales are lost generally because of the sale of competing products. Given the fact that liability under 35 U.S.C. § 271(a) can now rest on mere "offers to sell," the court is reluctant to require proof of actual sales and is not sure what other "tangible effect" is contemplated. Therefore, the court will not require evidence of "tangible effects" in this case.

> **FN7.** Although the court noted that, "as a general matter telephone calls and an e-mail [to a Delaware resident] do not, in and of themselves, automatically constitute 'transacting business' within Delaware sufficient to invoke jurisdiction under § 3104(c)(1)," the court looked at the specific factual context and held that these contacts were insufficient because they could not be a basis for the plaintiff's causes of action.

The court further finds that the exercise of personal jurisdiction over these defendants comports with federal due process considerations. The Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945), held that

> due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintainance of the suit does not offend "traditional notions of fair play and substantial justice."

*Id.* at 316 (citation omitted). The Court in *Burger*

Not Reported in F.Supp.2d                                                          Page 5
Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: 1999 WL 615175 (D.Del.))**

*King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id.* at 475 n. 18. Therefore, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* at 477. In *Luker,* the Federal Circuit suggested a three-prong jurisdictional analysis: 1) has the defendant purposefully directed its activities at residents of the forum?; 2) do the claims arise out of or relate to those activities?; 3) is the assertion of personal jurisdiction reasonable and fair? *See Luker,* 45 F.3d at 1545-46. The court has already answered the first two inquiries in the affirmative and has not discovered in the record any compelling evidence which suggests that the exercise of personal jurisdiction over these defendants would be unreasonable.

**\*5** The court concludes otherwise with respect to defendant Phamatech. The conduct attributed to Phamatech includes the following: 1) Phamatech manufactures allegedly infringing products; 2) Phamatech arranges for the distribution of its product through defendants Peninsula and Ramsey; and 3) Phamatech advertises its product through an Internet website accessible to Delaware residents. As noted previously, however, there had been no actual sales of infringing product in Delaware prior to the filing of the complaint. Neither is there evidence relating Phamatech to Peninsula and Ramsey's marketing efforts directed at Delaware residents. Although plaintiff asserts that "Phamatech intentionally established a chain of distribution that it knew, or reasonably could have foreseen, had a termination point in Delaware" (D.I. 62 at 11), the record does not demonstrate the existence of ongoing commercial relationships with retailers and customers in Delaware.

The facts of record are distinguishable, therefore, from the facts in *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994), cited by plaintiff. In that case, the court concluded that the alleged infringers were placing accused products into the chain of commerce, which included shipping products into the forum for sale to customers through an intermediary. Because the commercial relationship with the intermediary was ongoing and the accused products in fact had been shipped into the forum, the court found the defendant amenable to the exercise of personal jurisdiction: "From these ongoing relationships, it can be presumed that the distribution channel formed by defendants and [the intermediary] was intentionally established, and that defendants knew, or reasonably could have foreseen, that a termination point of the channel was [the forum]." *Royal Sovereign,* 21 F.3d at 1564. Instantly, there is no evidence demonstrating that Phamatech directed Peninsula and Ramsey's sales efforts at Delaware residents; there certainly is no evidence of any ongoing commercial relationships between Phamatech, Peninsula/Ramsey, and Delaware residents. The final conduct designated is Phamatech's Internet website. Assuming for purposes of this motion that a website with product information constitutes an "offer to sell," in the absence of evidence that Delaware residents actually accessed this website, the court declines to find that Phamatech transacted business in Delaware, consistent with 10 Del. C. § 3104(c)(1) and (3). [FN8]

> **FN8.** Plaintiff does not assert general jurisdiction under § 3104(c) (4).

**B. Venue**

Generally, in reviewing a motion for transfer of venue, this court gives great deference to a plaintiff's choice of forum and only transfers venue if the defendants truly are regional (as opposed to national) in character. Motions to transfer venue are granted as well if there is a related case which has been filed first or otherwise is the more appropriate vehicle to litigate the issues between the parties. Given the court's conclusion that it cannot exercise personal jurisdiction over defendant Phamatech, the manufacturer of the accused products, transfer of this case to the Southern District of California is warranted.

**IV. CONCLUSION**

**\*6** For the reasons stated, defendants' motions to dis-

Page 6
Not Reported in F.Supp.2d, 1999 WL 615175 (D.Del.)
**(Cite as: 1999 WL 615175 (D.Del.))**

miss are granted in part and denied in part. Defend-
ants' motions to transfer venue are granted.

An appropriate order shall issue.

Not Reported in F.Supp.2d, 1999 WL 615175
(D.Del.)

END OF DOCUMENT

# EXHIBIT C

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: 2001 WL 34368395 (D.Del.))**

C

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
Ole K. NILSSEN and Geo Foundation, Ltd.,
Plaintiffs,
v.
OSRAM SYLVANIA, INC. and Osram Sylvania
Products, Inc., Defendants.
No. Civ.A. 00-695-JJF.

May 1, 2001.
Donald F. Parsons, Jr., and Mona A. Lee, of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, Harry J. Roper, Raymond N. Nimrod, John E. Titus, and Jonathon Hill, of Roper & Quigg, Chicago, Illinois, for Plaintiffs, of counsel.

Richard K. Herrmann, of Blank Rome Comisky & Mccauley LLP, Wilmington, Delaware, Brian D. Sieve, Thomas G. Pasternak, Andrew M. Johnstone, and Kevin J. O'Shea, of Kirkland & Ellis, Chicago, Illinois, for Defendants, of counsel.

*MEMORANDUM OPINION*
FARNAN, J.

**\*1** Presently before the Court is Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15). For the reasons stated below, the Court will grant the motion.

BACKGROUND
Ole K. Nilssen ("Mr.Nilssen") is a Florida resident with his principal place of business in Chicago, Illinois. [FN1] (D.I 1 at ¶ 4). Mr. Nilssen is engaged in the business of "identifying, formulating plans for, developing know-how and technology for, and implementing (via licensing agreements) promising new business opportunities in the field of electronics, including electronic ballasts." (D.I. 1 at ¶ 8). Geo Foundation ("Geo") is a non-profit corporation incorporated in the Cayman Islands, British West Indies. (D.I. 1 at ¶ 5)(Mr. Nilssen and Geo collectively referred to as "Plaintiffs").

FN1. Mr. Nilssen contends that his ongoing business in Illinois, Innovations Center, "is now defunct." (D.I. 24, Exh. 1 at ¶ 8). However, Plaintiffs' Complaint alleges that Mr. Nilssen is currently engaged in "business opportunities." (D.I 1 at ¶ 4). Further, Mr. Nilssen admits that he still travels to Illinois regularly to "bring closure to [his] other business dealings that take place in Illinois." (D.I. 24, Exh. 1 at ¶ 8). The Court concludes that, for purposes of the instant motion, this record sufficiently establishes that Mr. Nilssen's principal place of business is in Illinois.

OSRAM Sylvania, Inc. and OSRAM Sylvania Products, Inc. (collectively "Defendants") are Delaware corporations with their principal places of business in Danvers, Massachusetts. (D.I. 13 at ¶ 6-7). Defendants are engaged in the business of making and selling electronic ballasts. (D.I. 13 at ¶¶ 11).

Plaintiffs filed the instant action against Defendants on August 1, 2000. In their Complaint, Plaintiffs contend that Defendants wilfully infringe twenty-six patents that were invented and are owned by Mr. Nilssen and of which Geo holds exclusive licenses. [FN2] (D.I. 1 at ¶¶ 9, 10, 13). On January 24, 2001, Defendants filed the instant motion to transfer the case to the United States District Court for the Northern District of Illinois. (D.I.15).

FN2. These patents include U.S. Patent No. B1 4,667,345; U.S. Patent No. 4,857,806; U.S. Patent No. 4,954,754; U.S. Patent No. 4,983,887; U.S. Patent No. 5,013,974; U.S. Patent No. 5,047,690; U.S. Patent No. 5,164,637; U.S. Patent No. 5,185,560; U.S. Patent No. 5,189,342; U.S. Patent No. 5,191,262; U.S. Patent No. 5,214,356; U.S. Patent No. 5,233,270; U.S. Patent No. 5,341,067; U.S. Patent No. 5,343,123; U.S. Patent No. 5,402,043; U.S. Patent No. 5,416,386; U.S. Patent No. 5,432,409; U.S. Patent No. 5,446,347; U.S. Patent No. 5,471,118; U.S. Patent No. 5,479,074; U.S.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: 2001 WL 34368395 (D.Del.))**

Patent No. 5,481,160; U.S. Patent No. 5,510,680; U.S. Patent No. 5,510,681; U.S. Patent No. 5,621,279; U.S. Patent No. 5,736,819 and U.S. Patent No. 6,002,210. (D.I. 1 at ¶ 9).

DISCUSSION

Under 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Since it is undisputed that Plaintiffs could have brought the instant action in the Northern District of Illinois, the Court's only task is to determine whether the factors enumerated in § 1404(a) warrant a transfer under the circumstances.

In determining whether or not to transfer venue under § 1404(a), a district court must consider a number of different factors. These factors include several private interests: (1) the convenience of the parties due to their relative physical and financial conditions, (2) the convenience of the expected witnesses, but only so far as the witnesses might be unavailable for trial if the trial is conducted in a certain forum, and (3) the location of books and records, to the extent that these books and records could not be produced in a certain forum. *Memminger v. InfoCure Corp.,* C.A. No. 00-707-JJF, slip op. at 4 (D.Del. Nov. 14, 2000)(citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995)). [FN3] These factors also include several public interests:

> FN3. *Jumara* also listed the following private interests that district courts should consider: (1) the plaintiff's choice of forum, (2) the defendant's preferred forum, and (3) whether the claim arose elsewhere. 55 F.3d at 879. Subsequent decisions of this Court, however, have determined that these interests are subsumed by the other *Jumara* factors. *Memminger,* slip op. at 5. Therefore, to avoid considering the same interests twice, the Court will not considered them separately. *Id.*

(1) the enforceability of the judgment, (2) practical considerations regarding the ease, speed, or expense of trial, (3) the administrative difficulty due to court congestion, (4) the local interest in deciding local controversies in the home forum, (5) the public policies of the two fora, and (6) the trial judge's familiarity with the applicable state law in diversity cases.

**\*2** *Id.* (citing *Jumara,* 55 F.3d at 879-80). When determining whether or not transfer is warranted under the circumstances, district courts must balance all of the relevant factors. *Jumara,* 55 F.3d at 883. "The burden is upon the [moving party] to establish that the balance of the [factors] strongly weighs in favor of the requested transfer, and a transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of the transfer." *Memminger,* slip op. at 4-5. Below, the Court will analyze the factors relevant to the instant motion.

A. Convenience of the Parties

The Court concludes that the convenience of the parties due to their relative physical and financial conditions weighs slightly in favor of transfer. Defendants' principal places of business are located in Danvers, Massachusetts. (D.I. 16 at 5). Many of Defendants' accused products are manufactured in Lake Zurich, Illinois, which is within the Northern District of Illinois. (D.I. 16 at 5). Defendants' contacts with Delaware, on the other hand, are minimal: Defendants are incorporated under Delaware law, Defendants have one salesperson who works out of a home office in Delaware, and some of Defendants' accused products are sold in Delaware. [FN4] (D.I. 16 at 5). *See Memminger,* slip op. at 6-7 (recognizing that the mere fact a defendant is incorporated in a given forum does not mean that transfer to another forum is not warranted); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* 11 F.Supp.2d 729, 730-30 (S.D.N.Y.1998)(holding that the Southern District of New York's connection to the litigation was "tenuous" for purposes of venue transfer analysis when the defendant was incorporated in New York and over 100 of the defendant's allegedly infringing products were sold in New York). Also supporting the requested transfer is the fact that Mr. Nilssen's principal place of business is in Illinois, and that several of his current and former employees reside in Illinois.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
(Cite as: 2001 WL 34368395 (D.Del.))

FN4. Plaintiffs' contention that their "claim arose" in Delaware, because some of Defendants' accused products are sold in Delaware, lacks merit. Defendants' products are sold nationwide; therefore, Delaware does not have any special "connection" to the case that would weigh against the requested transfer.

Based on these considerations, the Court concludes that it would be more convenient to litigate in the Northern District of Illinois rather than in Delaware. However, this factor weighs only slightly in favor of transfer because both Defendants are large companies that are financially capable of litigating in a distant forum. *Motorola Inc. v. PC-Tel. Inc.,* 58 F.Supp.2d 349, 358 (D.Del.1999)(holding that when the party seeking transfer is a multimillion dollar company, unless the company can articulate "some unique or unexpected burden" associated with litigating in a distant forum, this factor only weighs slightly in favor of transfer).

B. Convenience of the Witnesses

The Court concludes that the convenience of the witnesses weighs strongly in favor of transfer. The convenience of the witnesses is the most important factor in venue transfer analysis. *Mentor Graphics v. Quickturn Design Sys., Inc.,* 77 F.Supp.2d 505, 510 (D.Del.1999). The convenience of a witness is only relevant, however, "to the extent that the witness may actually be unavailable for trial in one of the fora." *Asten Inc. v. Weavexx Corp.,* 2000 WL 1728354, at *4 (D.Del. Feb. 11, 2000)(quoting *Jumara,* 55 F.3d at 879). A party need not allege that a witness definitely will be unavailable for trial; rather, it is sufficient for purposes of venue transfer analysis if the witness is not subject to a court's subpoena power. *Mentor Graphics,* 77 F.Supp.2d at 511. However, witnesses employed by the parties are not considered by a court conducting venue transfer analysis because the parties are obligated to procure the presence of their own employees at trial. *Id.*

**\*3** In the instant case, Defendants contend that no witnesses reside in Delaware but that a number of principal witnesses reside in the Northern District of Illinois, including: (1) Dale Fiene--an employee of Mr. Nilssen, (2) Robert Schneider--a former employee of Mr. Nilssen, (3) employees of Defendants, (4) employees of Motorola, Inc, and (5) employees of Advance Transformer, Inc. ("Advance"). (D.I. 16 at 10). In response, Plaintiffs contend that Defendants' contentions are unavailing because (1) Defendants have failed to explain the nature of these witnesses' testimony, and in several cases, have even failed to name the witnesses, (2) Defendants have failed to show that the use of videotaped deposition testimony would be an inadequate substitute for live trial testimony, and (3) Defendants have not alleged that any witnesses actually will be unavailable for trial. (D.I. 25 at 11).

The Court concludes that Plaintiffs' second and third arguments can be summarily rejected. As to Plaintiffs' third argument, as previously discussed, a party only needs to establish that witnesses might be unavailable for trial. As to Plaintiffs' second argument, the Court concludes that videotaped depositions are not an adequate substitute for live trial testimony when conducting venue transfer analysis because "[v]ideo depositions ... are unlikely to hold the rapt attention of a jury." *AlliedSignal, Inc. v. Cooper Auto., Inc.,* 1997 U.S. Dist. LEXIS 22902, at *11 n. 4 (D.Del. July 30, 1997).

Plaintiffs' first argument warrants more consideration. One of these witnesses, Dale Fiene, is a current employee of Mr. Nilssen; therefore, the Court concludes that Mr. Fiene should not be considered in the analysis. [FN5] (D.I. 24 at 9). The Court also agrees that Defendants' employees do not weigh into the analysis. However, Mr. Schneider, a former employee of Mr. Nilssen, and employees from Motorola and Advance do warrant consideration because they are potential third party witnesses.

FN5. To the extent that Mr. Nilssen admits that Mr. Fiene is a current employee, such admission belies Mr. Nilssen's attempt to downplay the extent of his business contacts in Illinois.

Plaintiffs contend that these potential third party witnesses do not weigh in favor of transfer because De-

fendants have failed to specifically identify many of these witnesses by name and/or the content of their testimony. (D.I. 24 at 10-11). However, Defendants specifically identify Mr. Schneider and note that his testimony is relevant because Mr. Schneider has submitted a number of affidavits to the PTO on Mr. Nilssen's behalf. (D.I. 16 at 10). Mr. Schneider's knowledge is relevant to Defendants' affirmative defenses, especially Defendants' allegations of inequitable conduct by Mr. Nilssen during the prosecution of many of the patents in suit.

Defendants' potential witnesses from Motorola and Advance have not been identified by name. However, Defendants indicate that Motorola's employees will testify about Motorola's business dealings with Mr. Nilssen and about prior art to the patents in suit. (D.I. 16 at 10). Defendants also indicate that Advance's employees will provide relevant testimony about a reasonable royalty and about prior art. [FN6] (D.I. 16 at 10). The Court concludes that such identification, especially when fact discovery has yet to take place and when Plaintiffs have yet to specify the specific patent claims and products implicated in the lawsuit, is sufficient for purposes of venue transfer analysis. [FN7] Therefore, the Court concludes that the convenience of the witnesses strongly weighs in favor of transfer.

> FN6. Advance's employees are knowledgeable on such issues because Advance has a license agreement with Mr. Nilssen. (D.I. 16 at 10).

> FN7. The cases cited by Plaintiffs in which the Court refused to afford unnamed witnesses any weight in the analysis involved situations where the movant merely stated that some witnesses existed that would not be available for trial. (D.I. 24 at 10-11)(citing *Motorola, 58 F.Supp.2d at 359; Sunds Defibrator, Inc. v. Durametal Corp.,* 1997 WL 74660, at *3 (D.Del. Jan. 31, 1997)). Defendants' identification of the witnesses distinguishes the instant case from *Motorola* and *Sunds Defibrator.*

C. Practical Considerations

**\*4** The Court also concludes that practical considerations regarding the ease, speed, or expense of trial strongly weigh in favor of the requested transfer. If related cases are pending in the district to which transfer is sought, such fact weighs in favor of the transfer. *Affymetrix, Inc. v. Synteni, Inc.,* 28 F.Supp.2d 192, 206 (D.Del.1998). In a recent case granting a motion to transfer, the Court relied heavily on the existence of patent litigation in another forum involving "a parent patent of the one at issue" and a patent involving a similar type of product which was arguably "directly related" to the patent at issue. *Brunswick Corp. v. Precor Incorp.,* 2000 WL 1876477, at *3, n. 2 (D.Del. Dec. 12, 2000).

In the instant action, Plaintiffs allege infringement of twenty-six patents, at least six of which are also being litigated in the Northern District of Illinois. [FN8] In the Illinois cases, *Markman* rulings have already been issued and case dispositive motions have already been filed. (D.I. 16 at 4). Therefore, the Court concludes that the waste of judicial resources in requiring two different courts to construe at least six of the same patents, [FN9] and to render *Markman* rulings on each of these patents, is a factor that strongly weighs in favor of transfer. [FN10]

> FN8. The number of patents in the instant case that overlap with patents involved in cases pending in the Northern District of Illinois is in dispute. Defendants contend that thirteen of the patents in this case are being litigated in *Nilssen v. Motorola, Inc.,* Case No. 96-5571, and that three of these patents are also being litigated in *Nilssen v. MagneTek, Inc.,* Case No. 98-2229. (D.I. 16 at 4). Plaintiffs respond that only six patents overlap between the *Motorola* case and the action presently before the Court. (D.I. 24 at 12 & n. 4). The Court concludes that it is unnecessary to determine exactly how many of the patents overlap and will accept as true, for purposes of this motion, that only six patents overlap.

> FN9. Defendants point out that the file wrapper for one of the overlapping patents consists of over 1,700 pages.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                            Page 5
Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)
**(Cite as: 2001 WL 34368395 (D.Del.))**

FN10. Plaintiffs contend that the doctrine of collateral estoppel will prevent any waste of judicial resources by precluding duplicative litigation. However, collateral estoppel only applies when a final judgment is rendered, so it could take months or years for collateral estoppel to become applicable. If *Markman* rulings are issued in the instant case that conflict with those rendered in the Northern District of Illinois prior to collateral estoppel becoming applicable, this could result in inconsistent judgments virtually guaranteeing that one of the judgments will get reversed on appeal. This judicial waste can be avoided by granting the instant motion to transfer.

CONCLUSION

In balance, the Court concludes that the relevant factors strongly weigh in favor of a transfer to the Northern District of Illinois. Both the convenience of the witnesses and practical considerations strongly weigh in favor of transfer, and the convenience of the parties weighs slightly in favor of transfer. On the other hand, no factors weigh against the requested transfer. [FN11] As a result, the Court concludes that a transfer to the Northern District of Illinois is warranted under the circumstances.

FN11. Plaintiffs contend that they have a legitimate desire to litigate in Delaware in order to quickly resolve the matter, and that this factor weighs in favor of transfer. (D.I. 24 at 12). However, the statistical evidence submitted by Defendants reveal that civil cases are, on average, resolved more quickly in the Northern District of Illinois than in Delaware; however, in cases that ultimately go to trial, Delaware is a more expedient forum. (D.I.16, Exh. H). Furthermore, Plaintiffs have admitted that the slow pace in the cases pending in the Northern District of Illinois is "due to the pace set by the lawyers." (D.I. 25, Exh. B at 2). Plaintiffs nonetheless assert that, because a trial date has already been set in the instant case for February 11, 2002, the instant suit will be resolved more quickly if tried in Delaware.

However, in complex patent cases such as this, the initial trial date is often pushed back as discovery problems arise. Considering the number of patents at issue in this case and that discovery has yet to commence, the February 11, 2002 trial date looks unrealistic.

After the briefing in this matter was completed, Plaintiffs sent two letters to the Court (D.I. 27; D.I. 28) indicating that the summary judgment motions pending in the Northern District of Illinois cases were going to be further delayed because the motions had been referred to a special master. However, the Northern District of Illinois's referral order, which is attached to one of Plaintiffs' letters, highlights the fact that quick resolution of the lawsuit in this District is unlikely. The Order stated that: "the voluminous documents and arguments involved in the case" and "the legal and factual complexity of the case" would be such a drain on judicial resources that the appointment of a special master is warranted. (D.I.28). The Court concludes that requiring two different courts to duplicate much of the same work would be inefficient and would not produce a more expedient resolution in this forum.

An appropriate Order will be entered.

*ORDER*

At Wilmington, this *1* day of May, 2001, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Defendants' Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) (D.I.15) is *GRANTED*.

Not Reported in F.Supp.2d, 2001 WL 34368395 (D.Del.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT D

Westlaw.

Not Reported in F.Supp.2d                                                                Page 1
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

H

Only the Westlaw citation is currently available.

United States District Court,
D. Delaware.
PADCOM, INC., Plaintiff,
v.
NETMOTION WIRELESS, INC. and Database Solutions, Inc., Defendants.
**No. Civ. 03-983-SLR.**

May 24, 2004.

Josy W. Ingersoll, John W. Shaw, and Adam W. Poff, of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware, Neil G. Greenblum, Van C. Ernest, and Jill M. Browning, of Greenblum & Bernstein, P.L.C., Reston, Virginia, of counsel.

Mary B. Graham, and James W. Parrett, Jr. of Morris, Nichols, Arsht & Tunnell, Wilmington, Delaware, John Allcock, M. Elizabeth Day, William G. Goldman, and Michael G. Schwartz, of Gray, Cary Ware & Freidenrich, LLP, Palo Alto, California, of counsel.

MEMORANDUM OPINION
ROBINSON, Chief J.

I. INTRODUCTION

*1 On October 26, 2003, plaintiff Padcom Inc. ("Padcom") filed this patent action alleging infringement of its United States Patent Nos. 6,418,324 ("the '324 patent") and 6,198,920 ("the '920 patent") by defendants NetMotion Wireless, Inc. ("NetMotion") and Database Solutions, Inc. ("DSI"). (D.I.1) Padcom also contends that NetMotion intentionally and wrongfully interfered with contractual and business relations with potential customers.

NetMotion has moved to dismiss based on lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2) and improper venue under Fed. R. 12(b)(3). (D.I.9) DSI has moved to transfer the remaining portion of the litigation to the Northern District of California pursuant to 28 U.S.C. § 1404(a). [FN1] Alternatively, if the court dismisses NetMotion and declines

to transfer the case against DSI, defendants move to stay this action pending resolution of the California case. Padcom opposes the motion (D.I.23, 24) and defendants' have filed their reply. (D.I.27, 28)

> FN1. On November 7, 2003, NetMotion and DSI filed a declaratory action in the Northern District of California mirroring the issues raised in this action. By order and stipulation dated December 10, 2003, the California action was stayed pending resolution of this first-filed action. *NetMotion Wireless, Inc. v. Padcom, Inc.,* 03-cv-04963-MMC, (N.D.Ca.2003) (D.I.12). A case management conference is scheduled for June 18, 2004. (*Id.,* D.I. 19)

II. BACKGROUND

A. The parties

Padcom is a Pennsylvania corporation with its principal place of business in Bethlehem, Pennsylvania. Founded in 1989, Padcom is in the business of developing, making, licensing, selling and servicing software and hardware products that enhance connectivity for wireless network uses. (D.I.1) The patent-in-suit relate to wireless communications and data transfers between remote devises and host systems. (D.I.10)

NetMotion is a corporation organized under the laws of Washington with a principal place of business in Seattle, Washington. (D.I.11) NetMotion is in the business of designing, developing and selling mobility software. Mobility software is client/server based software that extends the enterprise network to the mobile environment and allows mobile users on both wide area and local area networks secure access to the enterprise application and information. (D.I.10) NetMotion's corporate office, research and development facility, and engineering, sales, marketing and manufacturing facilities are all located in Seattle. Of NetMotion's 53 employees, 46 reside in Washington. The other seven employees reside in Ohio, Pennsylvania, Florida, Georgia, Texas, California and

Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
**(Cite as: 2004 WL 1192641 (D.Del.))**

Illinois. (D.I.11) NetMotion maintains and supports a web site in Washington. The web site provides: 1) company and product information; 2) partner information; and 3) download information. None of Net-Motion's products are available for purchase through its website; however, free trial versions of NetMotion's software are available for download from the web site. (D.I.12)

On February 2, 2001, a predecessor of NetMotion, WRQ, Inc., entered into a Value Added Reseller ("VAR") agreement with DSI. (D .I. 11, Ex. A) DSI is a Delaware corporation with its principal place of business in Cherry Hill, New Jersey. (D.I.13) DSI does not have an office in Delaware. DSI is in the business of providing integrated enterprise applications, databases and network solutions. DSI is a reseller of NetMotion products, however, DSI has never used, manufactured, sold or offered for sale any NetMotion product in Delaware or elsewhere. D.I. 13 ¶ 6) Pursuant to the VAR agreement, NetMotion has agreed to indemnify DSI.

III. STANDARD OF REVIEW

**\*2** Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, a court may dismiss a suit for lack of jurisdiction over the person. According to the United States Supreme Court,

before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant and a constitutionally sufficient relationship between the defendant and the forum. There must also be a basis for the defendant's amenability to service of summons. Absent consent, this means there must be authorization for service of summons on the defendant.

Omni Capital Intern. Ltd. v. Rudolph Wolff & Co., 484 U.S. 97, 104 (1987). The principle pronounced above is traditionally described as a two-step analysis: First, whether there is amenability to service and, second, whether the exercise of jurisdiction offends the defendant's right to due process.

Rule 4(e)(1) of the Federal Rules of Civil Procedure states that service of a summons may be effected "pursuant to the law of the state in which the district court is located." The Delaware long-arm statute, 10 Del.

C. § 3104(c), has been construed broadly to confer jurisdiction to the maximum extent possible under the due process clause. [FN2] LaNuova D & B S.p.A. v. Bowe Co. Inc., 513 A.2d 764, 768 (Del.1986).

> FN2. According to the Federal Circuit, when the question before the court is the exercise of personal jurisdiction over an out-of-state accused infringer, the law of the Federal Circuit, "rather than that of the regional circuit in which the case arose," is applicable. Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed.Cir.1995). The Court has instructed that, "in interpreting the meaning of state long-arm statutes, we defer to the interpretations of the relevant state and federal courts, including their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process." Graphic Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1386 (Fed.Cir.1998). The court acknowledges that the Delaware Supreme Court has not collapsed the analysis under the Delaware long-arm statute into the constitutional due process analysis, as some courts have done.

However, since the Delaware Supreme Court has not determined that § 3104(c) is coextensive with federal due process, the court must determine whether the exercise of personal jurisdiction is compatible with both the specific requirements of the Delaware long-arm statute and with defendant's constitutional rights to due process. Intel Corp. v. Silicon Storage Tech., Inc., 20 F.Supp.2d 690, 694 (D.Del.1998); see generally, Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945).

Once a jurisdictional defense is raised, the burden is on the plaintiff to demonstrate with reasonable particularity that sufficient minimum contacts have occurred with between the forum state and defendant to support jurisdiction. [FN3] Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir.1987). To meet this burden, the plaintiff must demonstrate either specific or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

activities within the forum state. In contrast, general jurisdiction does not require that the defendant's connections be related to the particular cause of action, but that the defendant has continuous or systematic contacts with the forum state. *American Bio Medica Corp. v. Penisula Drug Analysis Co, Inc .,* Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999).

> FN3. The record reflects that the parties have engaged in limited jurisdictional discovery. (D.I.24, Ex. A, Ex. B)

The Delaware long-arm statute provides that personal jurisdiction is proper over any nonresident who, in person or through an agent:

(1) Transacts any business or performs any character of work or service in the State;

(2) Contracts to supply services or things in this State;

**\*3** (3) Causes tortious injury in the State by an act or omission in this State;

(4) Causes tortious injury in the State or outside of the State by an act or omission outside the State if the person regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from services, or things used or consumed in the State;

(5) Has an interest in, uses or possesses real property in the State; or

(6) Contracts to insure or act as surety for, or on, any person, property, risk, contract, obligation or agreement located, executed or to be performed within the State at the time the contract is made, unless the parties otherwise provide in writing.

10 Del. C. § 3104(c). The above provisions have been construed "liberally so as to provide jurisdiction to the maximum extent possible" in order "to provide residents a means of redress against those not subject to personal service within the State." *Boone v. Oy Partek Ab,* 724 A.2d 1150, 1156-57 (Del.Super.1997).

## IV. DISCUSSION

NetMotion argues that its contacts with Delaware are too attenuated to establish either specific or general jurisdiction under Delaware's long-arm statute. (D.I.10)

Padcom asserts that NetMotion is subject to jurisdiction under three sections of the Delaware long-arm statute: § 3104(c)(1), (c)(4) and (c)(3). Padcom argues that § 3104(c)(1) and (c)(4), confer jurisdiction because NetMotion has repeatedly transacted and solicited business in Delaware. Specifically: (1) NetMotion shipped an infringing product to the Wilmington Police Department to enable them to evaluate the product in anticipation of a sale; (2) NetMotion has contacted Delaware residents by mail, email and telemarketing, either cold calling or in response to inquiries about the product; and (3) NetMotion operates a national interactive web site.

In opposition, NetMotion presents the affidavit of its CFO, Bob Colliton. (D.I.12, 28) Colliton avers:

> NetMotion maintains and supports a web site in the state of Washington, but none of NetMotion's products are available for purchase through NetMotion's web site. NetMotion's web site offers free trial downloads of its software, as well as white papers that outline the capabilities of NetMotion's software products.
>
> NetMotion has not contacted or otherwise engaged any company in Delaware to download a free trial version of NetMotion's software. NetMotion is aware of one trial download of its software from an entity in Delaware--the Wilmington Police Department. This download was not the result of any targeted or direct marketing on the part of NetMotion. Instead, the Wilmington Police Department was directed to NetMotion's web site through an offer that Hewlett-Packard included in the purchase of certain models of their iPAQ products. In particular, Hewlett-Packard included marketing information on a number of third party products on the installation CD for the iPAC. NetMotion was one of the wireless companies that Hewlett-Packard chose to include product information about, with a link to NetMotion's web site for a free trial version of the software. At no time prior to or after this download has any employee contacted the Wilmington Police Department. NetMotion's advertising strategy is national in nature. It is not directed to any particular region, state or company. On occasion, NetMotion has utilized the services of a third party telemarketing organization to obtain information re-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
**(Cite as: 2004 WL 1192641 (D.Del.))**

garding potential customers. Prospective customers in Delaware may have been contacted by this third party organization.

**\*4** (D.I.12) He states further that NetMotion has never used, sold, manufactured or offered for sale an accused product in Delaware. In his reply declaration, however, Colliton does acknowledge that in January 2004, NetMotion electronically transmitted its Mobility Connection Newsletter nationwide. Over 12,000 received this material, including 23 entities in Delaware. Nonetheless, Colliton indicates that no revenue was received from the 23 emails. Padcom responds that it is unnecessary to consummate a sale for jurisdictional purposes. *American Bio Medica Corp. v. Peninsula Drug Analysis Co., Inc.,* Civ. No. 99-218-SLR, 1999 WL 615175 (D.Del.1999). Padcom maintains that NetMotion's activities are part of a general business plan to solicit business in Delaware.

The Delaware Supreme Court has interpreted § 3104(c)(1) as a specific jurisdiction provision that requires a nexus between the cause of action and the conduct used as a basis for jurisdiction. *LaNuova D & B S.p.A. v. Bowe Co.,* 513 A.2d at 768. Section 3104(c)(4) is a general jurisdiction provision that allows the defendants contacts with the forum state to be unrelated to the cause of action. The Federal Circuit has found that when a defendant has "purposefully shipped the accused [product] into [the forum state] through an established distribution channel [n]o more is usually required to establish specific jurisdiction." *Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1564 (Fed.Cir.1994).

The record reflects that NetMotion made trial versions of products available on its web site for downloading by consumers located anywhere. There is no evidence of any restrictions on location of the download. NetMotion likewise placed its products into the stream of commerce by allowing Hewlett-Packard to include marketing information about NetMotion with a link to a free trial version of its software and a link NetMotion couches the relationship with Hewlett-Packard as one-sided, i.e., "Hewlett-Packard chose to include product information", the court interprets this as a mutually beneficial agreement.

The Third Circuit Court of Appeals recently explored the contacts necessary for a court to have specific jurisdiction over a defendant based on the operation of a web site. *Toys "R" Us, Inc., v. Step Two, S.A.,* 318 F.3d 446 (3d Cir.2003). In so doing, the Court acknowledged the traditional jurisdictional rules have to be adjusted to account for new factual scenarios created by the Internet.

> Under traditional jurisdictional analysis, the exercise of specific personal jurisdiction requires that the "plaintiff's cause of action is related to or arises out of the defendant's contacts with the forum." Beyond this basic nexus, for a finding of specific personal jurisdiction, the Due Process Clause of the Fifth Amendment requires (1) that the "defendant ha[ve] constitutionally sufficient minimum contacts with the forum," and (2) that "subjecting the defendant to the court's jurisdiction comports with traditional notions of fair play and substantial justice,"

**\*5** *Id.* at 451 (citations omitted); *see also, Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) (sliding scale analysis for personal jurisdictional issues in web site cases).

The Third Circuit's test is whether the defendant "intentionally and knowingly transacted business with residents of the forum state, and had significant other contacts with the forum besides those generated by its web site." *Toys "R" Us,* 318 F.3d at 453. There, the Court considered a trademark infringement and unfair competition action filed pursuant to the Lanham Act, 15 U.S.C. § 1501 *et seq.,* and New Jersey state law. The defendant was a Spanish corporation that owns or franchises toy stores in Spain and nine other countries but none in the United States. The defendant lacked any offices, bank accounts or employees in the United States. Further, the defendant did not direct any advertising or marketing efforts in the United States. The record did reflect that some merchandise for defendant's stores was purchased in the United States. From defendant's Internet web site, consumers could make online purchases; however, the site clearly was intended for users outside of the United States. For example, the price of items was noted in Spanish pesetas and Euros and goods ordered from the site could only be shipped within

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)
(Cite as: 2004 WL 1192641 (D.Del.))

Page 5

Spain. The electronic newsletter could be received by anyone with the only requirement being name and email address. In reversing and remanding to the district court on the issue of jurisdictional discovery, [FN4] the Third Circuit recognized that the record was too limited to provide an "occasion to spell out the exact mix of Internet and non-Internet contacts required to support an exercise of personal jurisdiction [,instead,] [t]hat determination should be made on a case-by-case basis by assessing the 'nature and quality of the contacts." ' *Id.* at 453; (quoting *Zippo, 952 F.Supp. at 1127).* Non-Internet factors that a district court should consider are: business trips to the forum state; telephone and fax communications directed to the forum state; purchase contracts with forum state residents; contracts that apply the law of the forum state; and advertisements in local newspapers. *Toys "R" Us,* 318 F.3d at 453- 454. Other relevant evidence that might support the exercise of personal jurisdiction is that the defendant purposely and knowingly conducted business in the forum state by directly targeting its web site to the state. *Id. at 454.*

FN4. The district court denied plaintiff the opportunity to conduct jurisdictional discovery to address the defendant's motion attacking jurisdiction.

In light of this authority, the court finds that NetMotion knowingly conducted business with Delaware residents. Discovery has revealed that the Wilmington Police Department at least tried to use the free trial download of NetMotion's mobility software. (D.I.24, Ex. G) The emails between the Wilmington Police Department reflect correspondence directed to correct problems associated with the use of the trial program in order to persuade the user to purchase the alleged infringing product. (*Id.*)

*6 Using a third party telemarketer, NetMotion contacted Delaware businesses to solicit business and purchases. NetMotion selected seven Delaware entities [FN5] for contact by a third party telemarketer in the summer of 2003. (D.I.24, Ex. A, pgs.61-64) Additionally, NetMotion specifically targeted Delaware health care facilities. [FN6] NetMotion also mailed promotional materials to a targeted market of public safety organizations. [FN7] The documents were

mailed to provide information about the products to encourage purchase. (D.I.24, Ex. A, pgs.44-45) If NetMotion did not intend to have Delaware residents as clients, it could have specifically excluded them from tele-marketers and their direct calling list. The fact that the marketing program did not generate sales belie the fact that attempts were made in Delaware, with knowledge and purpose, to do business.

FN5. The entities were: Dover Police Department, Industrial Affairs Division, Laurel Volunteer Fire Department, New Castle County Police Department, Newark Police-Traffic Division, Delaware State Police, Wilmington Police Department. (D.I. 24, Ex. A p. 61, Ex. K)

FN6. Alfred I. Dupont Hospital, Bayhealth Medical Center at Kent, Beebe Medical Center, Christiana Hospital, Delaware Hospital-Chronically Ill, Delaware Psychiatric Center, Milford Memorial Hospital, Nanticoke Memorial Hospital, Riverside Health Care Center, Saint Francis Hospital, Stockley Center, and the Wilmington VA Medical Center. (D.I.24, Ex. A, p. 89, Ex. M)

FN7. These agencies were identified as: Delaware State Police (Dover), Kent County Emergency Communications, Sussex County Emergency Medical Services, New Castle County Police Department, Wilmington Public Safety, Wilmington Police Department, Delaware State Police (Odessa), Delaware State Police (Wilmington), Newark Police Department. (D.I.24, Ex. A)

Having found jurisdiction proper under the Delaware long-arm statute, the analysis becomes whether the exercise of jurisdiction comports with the Due Process Clause of the United States Constitution. *See Int'l Shoe Co. v. Washington,* 326 U.S. at 310. Due process mandates that the defendant have certain minimum contacts with the forum state to ensure that the lawsuit does not offend "traditional notions of fair play and substantial justice." *Id.* at 316. In *Burger King Corp. v. Rudzewicz,* 471 U.S. 462 (1985), the

Supreme Court added the further requirement that the minimum contacts be "purposeful" contacts, noting that "even a single act can support jurisdiction" so long as it creates a "substantial connection" with the forum, in contrast to an "attenuated affiliation." *Id. at 475 n. 18.* Further, the Court has directed that courts consider: 1) whether the defendant reasonably could have anticipated being haled into the forum state's court, *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291-293 (1980)*; 2) the burden imposed on the defendant by litigating in that forum, *Asahi Metal Industry Co. v. Superior Court of California, 480 U.S. 102 (1987)*; and 3) plaintiff's interest in the forum state, *id.; see also, Provident National Bank v. California Federal Savings & Loan Assoc., 819 F.2d at 437* (Third Circuit held that plaintiff must show significantly more than minimum contacts to establish general jurisdiction).

As discussed above, the record reflects NetMotion's web site and the marketing promotion by Hewlett-Packard enabled users to download the accused products anywhere, but importantly in Delaware. By targeting businesses in the state, NetMotion knew that its conduct and connections with Delaware were such that they reasonably should have anticipated being brought to this forum.

## V. MOTION TO TRANSFER

DSI has moved to transfer venue from this district to the United States District Court for the Northern District of California pursuant to *28 U.S.C. § 1404(a)*, [FN8] arguing that the declaratory judgment action there provides a more convenient forum for the litigation. Padcom counters that a plaintiff's choice of forum is the paramount consideration in determining a transfer request. *Wesley-Jessen Corp. v. Pilkington Visioncare Inc., 157 F.R.D. 215 (D.Del.1993).* NetMotion [FN9] argues that the court should transfer the case to the United States District Court for the District of Washington.

> FN8. Title 28, Section § 1404(a) provides:
> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have

been brought.

> FN9. NetMotion filed a third action in the Superior Court of the State of Washington, King County, alleging that Padcom has tortiously interfered with NetMotion's contracts and business expectancies. *NetMotion Wireless Inc. v. Padcom, Inc.*, 04-cv-622-JCC (W.D. Wa 2004). Padcom removed the matter to the United States District Court for the Western District of Washington on March 24, 2004. (*Id.,* D.I. 1) On April 2, 2004, Padcom moved to transfer to the case to the United States District Court for the District of Delaware or to stay pending resolution of the instant case. (*Id.,* D.I. 8) NetMotion has filed opposition to the transfer motion, to which Padcom has filed a reply. (*Id.,* D.I. 11, 12) On May 4, 2004, Padcom, in the instant action, moved to enjoin prosecution of the subsequently filed action in the Western District of Washington and has requested that the court schedule a Rule 16 Conference. (D.I.33)

**\*7** Congress intended through *§ 1404* to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice. *Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Affymetrix, Inc. v. Synteni, Inc., 28 F.Supp.2d 192, 208 (D.Del.1998).* The burden of establishing the need to transfer rests with the movant "to establish that the balance of convenience of the parties and witnesses strongly favors the defendants." *Bergman v. Brainin, 512 F.Supp. 972, 973 (D.Del.1981)* (citing *Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir.1970), cert. denied, 401 U.S. 910 (1971)*). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail". *ADE Corp. v. KLA-Tencor Corp., 138 F.Supp.2d 565, 567 (D.Del.2001); Shutte, 431 F.2d at 25.*

The deference afforded plaintiff's choice of forum will apply as long as a plaintiff has selected the forum for some legitimate reason. *C.R Bard, Inc. v. Guidant Corp., 997 F.Supp. 556, 562 (D.Del.1998);*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)

(Cite as: 2004 WL 1192641 (D.Del.))

Page 7

*Cypress Semiconductor Corp. v. Integrated Circuit Systems, Inc.,* Civ. No. 01-199-SLR, 2001 WL 1617186 (D.Del.2001). Although transfer of an action is usually considered as less convenient to a plaintiff if the plaintiff has not chosen its " 'home turf' or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer." *In re ML-Lee Acquisition Fund II, L.P.,* 816 F.Supp. 973, 976 (D.Del.1993).

The Third Circuit Court of Appeals has indicated the analysis for transfer is very broad. *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995). Although emphasizing that "there is no definitive formula or list of factors to consider," *id.,* the court has identified potential factors it characterized as either private or public interest. The private interests include: (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)." *Id.* (citations omitted).

The public interests include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases." *Id.* (citations omitted).

*8 The court is unpersuaded that the private or public interests warrant a transfer. Both plaintiff and defendant DSI are located within close proximity to this court, in Pennsylvania and New Jersey, respectively. Although defendant NetMotion is located in Seattle,

Washington, it is a company trying to conduct business on a nationwide basis, including Delaware. Therefore, consistent with the deference afforded a plaintiff's choice of forum as well as the record established on the jurisdictional discovery issue, the court is satisfied that this litigation can be maintained without undue burden to the parties.

VI. CONCLUSION

For the reasons stated, defendants' motion to dismiss and to transfer (D.I.9) is denied. An order consistent with this memorandum opinion shall issue.

Not Reported in F.Supp.2d, 2004 WL 1192641 (D.Del.)

END OF DOCUMENT

# EXHIBIT E

Not Reported in F.Supp.2d                                                                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)
**(Cite as: 2006 WL 3242274 (E.D.Pa.))**

H

Only the Westlaw citation is currently available.

United States District Court,
E.D. Pennsylvania.
M. Frederick PIERCE, et al.
v.
HAYWARD INDUSTRIES, INC., et al.
**Civil Action No. 05-5322.**

Nov. 6, 2006.

Joseph P. Connor, III, Mary Ellen F. Pina, William J. Weber, Jr., Connor Weber & Oberlies PC, Paoli, PA, for M. Frederick Pierce, et al.

Jonathan Dryer, Wilson Elser Moskowitz Edelman & Dicker LLP, Judith H. Ring, Thomas P. Bracaglia, Marshall Dennehey Warner Coleman & Goggin, Lois M. Shenk, Post & Schell, PC, Philadelphia, PA, Francis P. Manchisi, White Plains, NY, Michael J.Plevyak, White & Williams LLP, Berwyn, PA, for Hayward Industries, Inc., et al.

### *MEMORANDUM AND ORDER*
NORMA L. SHAPIRO, S.J.

**\*1** Defendant Alger Manufacturing Comany ("Alger") has moved to dismiss plaintiffs' complaint under Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Alger's previous motion to dismiss on the same grounds was denied without prejudice, so that plaintiffs could take limited discovery on the question of jurisdiction. Alger renewed its motion to dismiss after the completion of that discovery. Alger's motion will be granted because plaintiffs have not established sufficient contacts with the Commonwealth of Pennsylvania or demonstrated that Alger carries on continuous and systematic business within the state.

### I. *Facts*

On May 22, 2004, plaintiff M. Frederick Pierce was seriously injured at his residence in Malvern, Pennsylvania when his pool filter violently exploded in his face while he was performing required annual maintenance work. The pool filter was manufactured by Alger's codefendant Hayward Industries, Inc. Al-

ger is a manufacturer of precision machined products, including a brass sleeve nut that was incorporated in the Hayward pool filter.

Alger is not a Pennsylvania corporation. It is incorporated under the laws of the State of California, and its principal place of business is located in Ontario, California. (Affidavit of Duane Femrite, Chairman of the Board and Chief Executive Officer of Alger, Exhibit 1 to Alger's Motion (the "Femrite Affidavit"), ¶ 2). Alger does not own, use or possess any real property within Pennsylvania; it does not pay business or other taxes to Pennsylvania; it does not maintain any offices, or have any agents or employees, located within the Commonwealth. (Femrite Affidavit, ¶¶ 6, 8, 9, 10). It has not consented to the jurisdiction of any Pennsylvania court. (Femrite Affidavit, ¶ 13).

Alger has had sporadic business contacts with Pennsylvania over the years. A review of Alger's sales from 1999 through 2006 showed four sales to a Pennsylvania company, with the last one made in 2001. These sales totaled $2,156.93, or approximately 0.001% of Alger's total sales during that period. (Second Femrite Affidavit, Exhibit C to Alger's Motion, ¶ 6).

The allegedly defective brass sleeve nut, manufactured by Alger and then incorporated in the Hayward filter, was not sold to Hayward in Pennsylvania. Alger maintains, and Pierce does not dispute, that all brass sleeve nuts sold by Alger to Hayward were shipped to Hayward's facilities in California or North Carolina, not to Pennsylvania. (Femrite Affidavit, ¶ 17; James Hemingway, N.T.41, Exhibit E to Alger's motion). There is no evidence that Alger knew, at the time it supplied brass sleeve nuts to Hayward in California in 1998 (when the pool filter was manufactured) that Hayward distributed products in all 50 states. (Stipulation of Counsel, ¶ 2).

During the seven year period from 1999 to 2006, Alger made fifty-eight purchases of goods or services from Pennsylvania totaling $149,303, or approximately $22,000 per year. These purchases amounted to 0.082% of Alger's total sales during that period. (See

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)
**(Cite as: 2006 WL 3242274 (E.D.Pa.))**

Page 2

Femrite Affidavit ¶ 8 and Exhibit D to Alger's Motion). Alger did not directly purchase metal used to manufacture the brass sleeve nuts for Hayward from any Pennsylvania vendor. (Stipulation of Counsel, ¶ 1).

**\*2** In addition to these sales and purchases of products, Alger maintains a website, www.alger1.com, that is available to Pennsylvania residents. The website was not used to buy or sell the sleeve nut at issue. It enables users to learn information about the company and to click on a map of Pennsylvania, from which they are then referred to the phone number of an Alger sales representative in California. The website lists sales representatives dedicated to at least 20 states other than Pennsylvania but none for Pennsylvania. Pennsylvania residents can view products offered by Alger and electronically submit prints of specific parts sought to be purchased. They can also apply for employment with Alger online, with a free gift promised for doing so. Products cannot be ordered online and communication can only be initiated through an email link.

## II. *Discussion*

### A. *Standard of Review*

Once a defendant asserts a lack of personal jurisdiction, the burden to prove otherwise is on the plaintiff. *Provident Nat. Bank v. California Fed. Sav. & Loan, Inc., 819 F.2d 434, 437 (3d Cir.1987).* To satisfy this burden, a plaintiff must establish with reasonable particularity sufficient contacts between the defendant and the forum state. *Mellon Bank (East) PSFS v. Farino, 960 F.2d 1217, 1223 (3d Cir.1992).*

A federal court exercises personal jurisdiction to the extent authorized by the state's long-arm statute. *See* Fed.R.Civ.P. 4(e). Pennsylvania's statute extends jurisdiction to the fullest extent allowable under the Constitution, 42 Pa. Cons.Stat.Ann. § 5322(b), so the question is whether the exercise of personal jurisdiction over Alger is constitutional. *See Mellon Bank, 960 F.2d at 1221.* Constitutional jurisdiction can be established two different ways: specific jurisdiction and general jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414-16 (1984).*

Specific jurisdiction is established when the basis of the "plaintiff's claim is related to or arises out of the defendant's contacts with the forum." *Pennzoil Products Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 201 (3d Cir.1998)* (citations omitted). General jurisdiction does not require the defendant's contacts with the forum state to be related to the underlying cause of action, *Helicopteros, 466 U.S. at 414,* but the contacts must have been "continuous and systematic." *Id at 416.*

Alger contends that Pierce has not met its burden to establish either kind of jurisdiction.

### B. *Specific Jurisdiction*

The Pennsylvania Long Arm statute, 42 Pa.C.S.A. § 5322, provides that specific jurisdiction can be exercised over a defendant who "transact[s] any business" in Pennsylvania or "caus[ed] harm or tortious injury in [Pennsylvania] by an act or omission outside of [Pennsylvania]." In deciding whether specific personal jurisdiction is appropriate, a court must first determine whether the defendant had the minimum contacts with the forum necessary to have reasonably anticipated being haled into court there. *Pennzoil, 149 F.3d at 201,* citing *World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980).* Second, assuming minimum contacts have been established, a court may inquire whether the assertion of personal jurisdiction would comport with traditional conceptions of fair play and substantial justice. *Pennzoil, 149 F.3d at 201,* citing *Burger King Corporation v. Rudzewicz, 471 U.S. 462, 476 (1985); International Shoe Co. v. Washington, 326 U.S. 310, 320 (1945).* The first step is mandatory but the second step is discretionary. *See Pennzoil, 149 F.3d at 201.*

**\*3** In addition to direct sales of products into a forum state, a defendant may create the minimum contacts necessary for a court to assert specific jurisdiction by placing a product into the "stream of commerce," which through a chain of distribution finds its way into the forum state. *See Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102 (1987); Renner v. Lanard Toys Ltd., 33 F.3d 277, 279 (3d Cir.1994).* In its plurality opinion, the Supreme Court in Asahi proposed three separate tests for establishing stream of com-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                         Page 3
Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)
**(Cite as: 2006 WL 3242274 (E.D.Pa.))**

merce jurisdiction. One test is whether any conduct by a defendant shows an intent to serve the market in the forum state. *Id.* at 112 (O'Connor, J.). A second test requires demonstration of an awareness that the final product is marketed in the forum state in the "regular and anticipated flow of products". *Id.* at 117 (Brennan.J., concurring). A third test would evaluate the volume, value and hazardous nature of the goods entering the forum state. *Id.* at 122 (Stevens, J., concurring).

Our Court of Appeals has not yet adopted any of the three stream of commerce tests announced in *Asahi*. *See Pennzoil,* 149 F.3d at 205; *Renner,* 33 F.3d at 281-82; *Affatato v. Hazet-Werk,* 2003 WL 22797786 (E.D.Pa. Nov. 19, 2003). However, it has made clear that a defendant must have engaged in some form of "purposeful availment" of the laws of the forum state. *Cf. Pennzoil,* 149 F .3d at 207 (purposeful availment found where defendant sold sixty percent of two grades of oil to Pennsylvania refineries; defendant knew the oil was going to Pennsylvania; and defendant was designing a product for the Pennsylvania market); *with Renner,* 33 F.3d at 283 (no purposeful availment by Hong Kong toy manufacturer in merely placing product, F.O.B. Hong Kong, into the stream of commerce). [FN1]

> FN1. The Court of Appeals in *Renner* found the record regarding "purposeful availment" was ambiguous and remanded for further proceedings. 33 F.3d at 284.

Pierce argues that specific jurisdiction under the "stream of commerce" theory is present because (1) component parts Alger sold to Hayward were incorporated in the Hayward pool filter; (2) Hayward is an international corporation making regular sales in Pennsylvania (3) Hayward has authorized dealers in Pennsylvania; (4) Hayward has sales in excess of $500 million and over 1,500 employees; and (5) Hayward products are marketed worldwide. Pierce concedes there is no evidence that Alger knew, at the time it supplied the brass sleeve nut to Hayward, that Hayward distributed its products to all 50 states (Stipulation, ¶ 2). The facts cited by Pierce may establish personal jurisdiction over Hayward because of its distribution of products in Pennsylvania, but they

are not sufficient to establish jurisdiction over Alger. Mere forseeability that the defendant's products may end up in the forum state is not sufficient for "stream of commerce" jurisdiction. *Pennzoil,* 149 F.3d at 203. The defendant must have demonstrated some "purposeful availment" of the laws of the forum state. *Id.*

No such purposeful availment has been shown here. The sleeve nut in question was not sold in Pennsylvania, and no other Alger sleeve nuts were sold to Pennsylvania businesses. Alger's other sales to Pennsylvania were very insignificant and sporadic. Although Alger's sleeve nuts, after incorporation in Hayward's products, entered Pennsylvania through a chain of distribution, this fact alone is insufficient to exercise personal jurisdiction under any of the three stream of commerce tests announced in *Asahi*. Apart from its website, Alger did not exhibit any conduct showing an intent to service the Pennsylvania market. There was no evidence of the regularity of Alger's sleeve nut in Hayward's filters reaching Pennsylvania. There was no evidence of the volume and value of Alger's sleeve nuts reaching Pennsylvania through incorporation in Hayward pool filters. The sleeve nut was not hazardous by nature. Pierce has not established sufficient minimum contacts with Pennsylvania to show that it could have reasonably anticipated being sued here or that any of the three *Asahi* tests for the exercise of specific jurisdiction have been met.

**C. General Jurisdiction**

**\*4** Pursuant to Pa.C.S.A. § 5301(2), general jurisdiction can be exercised over a corporation in Pennsylvania if the corporation: (a) is incorporated in Pennsylvania; or (b) has consented to jurisdiction; or (c) carries on a continuous or systematic part of its general business in Pennsylvania. Whether Pierce can establish general jurisdiction depends on whether Alger has carried out continuous and systematic business within Pennsylvania. *See Helicopteros,* 466 U.S. at 416; *Provident,* 819 F.2d at 437. Numerous factors are used to assess the level of contacts, including the maintenance of offices, location of assets or employees within the forum state, as well as direct advertising and sales in the forum state. *See Hlavac v. DGG Props.,* 2005 WL 839158, at \*3 (E.D.Pa. Apr. 8,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2005); *see also Corporate Aviation Concepts, Inc. v. Multiservice,* 2003 WL 22794693, at *3 (E.D.Pa. Nov. 13, 2003) (listing factors). The amount of business conducted in the state is less important than the nature of defendant's business in the state, that is, whether the business dealings are central to the defendant's business and how frequently such dealings occur. *Cf. Provident,* 819 F.2d at 438 (California bank's maintenance of controlled disbursement account at a Pennsylvania bank, with daily accounting of monies, constituted "substantial, ongoing, and systematic activity in Pennsylvania," because it was a central part of the defendant's business, even though less than 1% of defendant's loans and deposits originated in Pennsylvania); with *Modern Mailers, Inc. v. Johnson & Quin, Inc.,* 844 F. Supp 1048, 1053-54 (E.D.Pa.1994) ($231,000 of direct sales to Pennsylvania, less than 1% of Illinois company's sales, was not sufficient to establish jurisdiction because the sales were not central to defendant's business and did not involve substantial continuous regular contact).

Pierce concedes that Alger's sales to Pennsylvania are de minimis (Pierce Response, Brief at 14), so it does not rest its claim to jurisdiction on such sales. Pierce instead contends that Alger carries on a "continuous and systematic part of its business" in Pennsylvania by its *purchases* of raw materials from Pennsylvania vendors and by its maintenance of an interactive website.

### a. Purchases of Products

Alger's purchases from Pennsylvania vendors totaled only $149,303, less than $22,000 per year or 0.082% of Alger's cumulative sales during that period. Pierce counters that in 2001 alone, Alger purchased 109,000 pounds of raw brass from Pennsylvania vendors. This may seem like a large quantity without context, but Alger's website declares purchases of 10,000,000 pounds of raw materials annually, so the Pennsylvania purchases would constitute only 1% of total annual purchases. Even if there were a significantly larger volume, "mere purchases, even if occurring at regular intervals, are not enough to warrant a state's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not re-

lated to those purchase transactions." *Helicopteros,* 466 U.S. at 418 (Columbian corporation's purchases of 80% of its helicopters from Texas and $4,000,000 worth of parts did not constitute systematic and continuous contacts necessary to establish general personal jurisdiction). [FN2]

> FN2. The *Helicopteros* holding was limited to foreign corporations, but the Supreme Court relied on, and did not overrule, the previous case of *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516 (1923) (Brandeis, J.), in which purchases and related trips were deemed insufficient to support personal jurisdiction.

### b. Alger's Website

**\*5** Pierce also contends that Alger's website demonstrates its continuous and systematic business operations in Pennsylvania. There is no allegation that the brass used in the allegedly defective sleeve nut was purchased over the internet or that the sleeve nut was sold via the internet so that the exercise of specific jurisdiction would be appropriate. The website is relevant only if it demonstrates evidence of sufficient continuous business to establish general jurisdiction over Alger.

Since the advent of the internet, which allows easy communications, commerce, and general transactions across state lines, courts have struggled to address jurisdictional issues arising from these electronic activities. To the extent that a direct solicitation or contractual agreement sent via email directly leads to a civil action, jurisdiction is readily exercised. Actions involving domain names that infringe on trademarks, or companies that offer purely (or primarily) internet-based services are also straightforward; jurisdiction and interstate activities are central to the case, so the exercise of specific jurisdiction is warranted. In personal injury cases, plaintiffs have attempted to assert general personal jurisdiction over non-resident defendants based solely on the existence of a defendant's website having nothing to do with the alleged injury. Because a website is always available, it is likened to "continuous and systematic" activity in the forum state.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)
(Cite as: 2006 WL 3242274 (E.D.Pa.))

Page 5

A leading case regarding personal jurisdiction based on a website is *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D .Pa.1997), in which the district court established a sliding scale test, with personal jurisdiction found to be appropriate if a website was "interactive" but not if the website was "passive". In *Zippo,* a manufacturer of lighters had sued a California company for trademark infringement after it registered a series of domain names that included the plaintiff's trademark. The defendant used the domain names in its website newsgroup postings. The court held that personal jurisdiction was proper because the California company had about 3,000 Pennsylvania subscribers who regularly downloaded messages containing the purported trademark infringements. Purposeful availment was established by the processing of applications from Pennsylvania residents and the assignment of passwords to the web site. The alleged trademark infringements were deemed to have occurred in Pennsylvania when local residents viewed the site, and the state was found to have a substantial interest in protecting the trademarks of its residents.

Our Court of Appeals considered personal jurisdiction in another trademark case based on an infringing website in *Toys "R" Us,* 318 F.3d at 446. The Court discussed the "sliding scale" approach of *Zippo* and called it the "seminal authority" on these types of cases. *Id.* at 452. It held that "the mere operation of a commercially interactive web site should not subject the operation to jurisdiction anywhere in the world. Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the forum state, by directly targeting its web site to the state, knowingly interacting with residents of the forum state via its web site, or through sufficient other related contacts." *Id.* at 454. [FN3]

> **FN3.** Ultimately, the court determined that further discovery was necessary to determine whether there was purposeful availment. *Id* . at 455.

**\*6** While *Zippo* offers a simple test for courts to follow based on the level of website interactivity, interactivity is not the only consideration, especially in a personal injury case where the website is unrelated to the cause of action. *See generally* Dennis T. Yokoyama, *You Can't Always Use the Zippo Code: The Fallacy of a Uniform Theory of Internet Personal Jurisdiction,* 54 DePaul L.Rev. 1147 (2005) (evaluating courts' adoption of the *Zippo* test). Courts have shown a reluctance to exercise personal jurisdiction based solely on a website and have looked at interactivity along with other factors. Three Eastern District of Pennsylvania decisions are instructive.

In *O'Connor v. Sandy Lane Hotel Co.,* 2005 WL 994617 (E.D.Pa. Apr. 28, 2005) (Joyner, J.), the court found that the defendant hotel in Barbados was not subject to general jurisdiction in a personal injury case despite the fact that it operated a website accessible to Pennsylvania residents. "[M]uch like an in-print advertising campaign, the website must either be 'central' to the defendant's business in the forum state or specifically target residents of the forum state." *Id.* at *3 (citing *Snyder v. Dolphin Encounters,* 235 F.Supp.2d 433, 440-41 (E.D.Pa.2002).

In *Hlavac v. DGG Properties,* 2005 WL 839158 (E.D.Pa. Apr. 8, 2005) (Yohn, J.), the defendant, a Connecticut resort, operated a website through which visitors could purchase gift certificates and inquire about reservations but not book online. Plaintiffs claimed they would not have chosen the resort but for the website. Using the *Zippo* test, the court determined that the resort's website was not sufficiently interactive to justify general jurisdiction, and the ability to purchase gift certificates was insufficient because plaintiffs had not alleged any facts suggesting that gift certificates were "central to defendants' business." *Id.* at 6. The court also found the exercise of general jurisdiction to be inappropriate because the website was not designed specifically to reach customers in Pennsylvania. *Id.,* citing *Molnlycke Health Care AB v. Dumex Med. Surgical Prods., Ltd.,* 64 F.Supp.2d 448 (E .D.Pa.1999) and *Toys "R" Us,* 318 F.3d at 446.

In *Snyder v. Dolphin Encounters Ltd.,* 235 F.Supp.2d 433 (E.D.Pa.2002) (Brody, J.), personal jurisdiction was found lacking over a Bahamian corporation despite the fact that it received 5% of its website information requests from Pennsylvania and 3% of its overall requests from Pennsylvania. The court reasoned

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)
**(Cite as: 2006 WL 3242274 (E.D.Pa.))**

Page 6

that the contacts were "insufficient to comprise the continuous and systematic contacts necessary to establish personal jurisdiction." *Id.* at 438. Considering the *Zippo* formulation and citing *Molnlycke,* the court also found that the website was not sufficiently interactive to establish general jurisdiction, even though it included an on-site order form, an on-site "ask the trainer" form, an on-site souvenir order form, and an on-site page allowing correspondence with management personnel (accessed more than 1,400 times by Pennsylvania IP addresses). *Id.* at 440. The court found that the websites were not targeted specifically to Pennsylvanians and were not central to the defendant's business in Pennsylvania. *Id.* at 440-41. *See also Horizon Aggressive Growth, L.P. v. Rothstein Kass, P.A.,* 421 F.3d 1162 (11th Cir.2005) (requiring "connexity" between the out-of-state communications and the cause of action).

**\*7** There is an understandable judicial reluctance to extend the traditional limits on the exercise of personal jurisdiction over defendants based solely on a website accessible from the forum state. Whether the site is deemed not interactive enough, not targeted toward the forum state, not central to the defendant's business, or simply having no "connexity" to the cause of action, courts have resisted asserting general jurisdiction in these circumstances. Pierce's counsel contends that the decisions in *Mar-Eco, Inc. v. T & R & Sons Towing & Recovery, Inc.,* 2003 Pa.Super. 444, 837 A.2d 512 (2003) and *Gammino v. SBC Communs., Inc.,* 2005 U.S. Dist. LEXIS 5077 (E.D.Pa. March 29, 2005) support the exercise of jurisdiction based on Alger's website. Both of these cases are distinguishable. First, neither is a personal injury case. [FN4] Second, using the *Zippo* analysis, both websites had elements of substantial interactivity. The website in *Mar-Eco* was highly interactive, as it enabled one to complete nearly an entire vehicle purchase transaction on the site; the *Gammino* website linked Pennsylvania residents to a subsidiary's highly interactive website, Cingular Wireless.

> FN4. *Mar-Eco* was an action for unjust enrichment against a Maryland motor vehicle dealer for failing to record timely the Pennsylvania dealer's interest in vehicles sold. *Gammino* was a patent infringement

case.

The Alger website is not highly interactive, and users can only initiate a communication through an email link or an online employment form. Users can click on a map of Pennsylvania, but they are then referred to the number of an Alger sales representative in California. A prospective employee can apply for a job online, and a free gift is promised to users who submit an application on line. Pierce makes much of a potential customer's ability to send prints over the internet, or the ability to apply for employment online, but there is no transaction, purchase or sale, that can be consummated by means of the website. Under the *Zippo* analysis, the website is not sufficiently interactive to support a finding of personal jurisdiction.

In addition, there is no connection between the website and the cause of action here. The website does not demonstrate a "conscious choice to conduct business with the residents" of Pennsylvania and "intentionally interact with [Pennsylvanians] via the web site in order to show purposeful availment ..." *Toys "R" Us,* 318 F.3d at 446. The website is not targeted specifically to reach Pennsylvanians and is not central to the defendants' business in Pennsylvania. *See Molynlycke Health Care,* 64 F.Supp.2d at 448. No sales are conducted by means of the web. Users cannot link to a specific sales representative for Pennsylvania but are instead routed to an email link for Alger's headquarters in California. The capabilities that are offered, *ie .,* the ability to send prints, view product lines and submit employment applications, are simply not enough to find that the exercise of personal jurisdiction is warranted. As Judge Brody stated, "[a] passive website that does little more than provide information is not grounds for the exercise of personal jurisdiction ... If the contacts at issue here establish general personal jurisdiction, then any corporation with websites like [defendant's] would be subject to general jurisdiction in every state." *Snyder v. Dolphin Encounters Limited,* 235 F.Supp.2d at 441. The same is true here.

### III. Conclusion

**\*8** For the reasons discussed above, Alger's motion to dismiss for lack of personal jurisdiction is granted.

Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)
**(Cite as: 2006 WL 3242274 (E.D.Pa.))**

An appropriate Order follows.

### ORDER

AND NOW, this 6th day of November, 2006, upon consideration of Alger Manufacturing Company's Renewed Motion To Dismiss for Lack of Jurisdiction and the plaintiffs' response thereto, it is **ORDERED** that:

1. Alger's Motion To Dismiss for Lack of Jurisdiction (Paper # 221) is **GRANTED.**

2. Alger's Motion for Leave to File a Reply (Paper # 227) is **DENIED** as moot.

Not Reported in F.Supp.2d, 2006 WL 3242274 (E.D.Pa.)

END OF DOCUMENT