IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRISTRATA TECHNOLOGY, INC.        :
                                  :
        Plaintiff,                :
                                  :
    v.                            : Civil Action No. 06-652-JJF
                                  :
EMULGEN LABORATORIES, INC.,       :
DOCTOR'S DERMATOLOGIC FORMULA,    :
AND BORLIND OF GERMANY, INC.      :
                                  :
        Defendants.               :

Michael O. Warnecke, Esquire, of PERKINS COIE, LLP, Chicago, Illinois.
Kevin M. McGovern, Esquire, and Brian T. Foley, Esquire, of MCGOVERN & ASSOCIATES, New York, New York.
Arthur G. Connolly, III, Esquire, of CONNOLLY BOVE LODGE & HUTZ, LLP, Wilmington, Delaware.

Attorneys for Plaintiff.

Ronald A. Stearney, Jr., Esquire, of LAW OFFICES OF RONALD A. STEARNEY, Chicago, Illinois.
Karen R. Keller, Esquire, of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendants.

**MEMORANDUM OPINION**

February 25, 2008
Wilmington, Delaware

**Farnan, District Judge.**

Pending before the Court is Defendant Emulgen's Motion To Dismiss and, in the Alternative, Motion To Transfer Venue (D.I. 14). For the reasons discussed below, the Court will deny Defendant's Motion.

I. **BACKGROUND**

Plaintiff TriStrata Technology, Inc. ("TTI") is a Delaware corporation with its principal place of business in Wilmington, Delaware. TTI develops and licenses dermatological, pharmaceutical and skin care product technology, and is the owner of several patents which describe and claim a method of using a composition containing alpha hydroxyacid to treat skin conditions including wrinkles, fine lines, and other effects of aging on the human skin.(D.I. 1).[1] These patents were issued to Doctors Eugene J. Van Scott and Ruey J. Yu, who assigned them to TTI. (D.I. 1 at 2).

On October 20, 2006, TTI filed this action alleging infringement of the five patents at issue by the Defendants. On April 5, 2007, Defendant Emulgen Laboratories, Inc. ("Emulgen") filed the instant Motion to Dismiss for lack of personal jurisdiction and insufficiency of process, and to change venue, pursuant to Federal Rules of Civil Procedure 12(b)(2) and

---

[1] TTI's patents at issue in this litigation are U.S. Patent Nos. 5,091,171, 5,547,988, 5,385,938, 5,389,677, and 5,422,370. (D.I. 1 at 3-5).

2

12(b)(3). (D.I. 14).

Emulgen is an Illinois corporation with its principal place of business in Des Plaines, Illinois. (D.I. 15 at 2). Emulgen manufactures, distributes and sells cosmetic products, specifically a skin care product known as Liftvisage. (D.I. 15 at 2). Emulgen does not maintain offices, facilities, local telephone listings or bank accounts in Delaware, or own any real or personal property in Delaware. (D.I. 15 at 2). Emulgen does not employ any persons in Delaware. (D.I. 15 at 2). As a result of a contract with a marketing company that conducted a broadcast e-mail campaign, Emulgen received and filled orders from approximately four Delaware residents. (D.I. 15 at 2). One of these orders was placed in 2004, and three were placed in 2006. Orders from customers in Delaware constituted 0.0015 percent of Emulgen's revenue in 2004, and 0.000008 percent of Emulgen's revenue in 2006.

Emulgen's product, LiftVisage, is currently being sold by Jevene, and is available through an interactive website (http://www.jevene.com) which is not limited geographically, and allows purchases from any of the United States. (D.I. 20 at 3). At the time the complaint was filed, LiftVisage was available for purchase on the website http://eximpact.com. (D.I. 20 at 3).

3

## II. Legal Standard

In order for personal jurisdiction to exist over a defendant, two requirements, one statutory and one constitutional, must be satisfied. First, a federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state. Fed.R.Civ.P. 4(e). Therefore, the Court must determine whether there exists a statutory basis for finding jurisdiction under the Delaware long-arm statute. See 10 Del. C. § 3104. Second, because the exercise of jurisdiction must also comport with the Due Process Clause of the United States Constitution, the Court must determine if an exercise of jurisdiction violates Emulgen's constitutional right to due process. Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945).

Once a jurisdictional defense has been raised, the plaintiff bears the burden of establishing with reasonable particularity that sufficient minimum contacts have occurred between the defendant and the forum state to support jurisdiction. Provident Nat'l Bank v. California Federal Savings & Loan Assoc., 819 F.2d 434, 437 (3d Cir. 1987). To satisfy this burden, the plaintiff must establish either specific jurisdiction or general jurisdiction. Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state, while general jurisdiction arises when the defendant

4

has continuous and systematic contacts with the state, regardless of whether the defendant's connections are related to the particular cause of action. <u>Helicopteros Nacionales de Columbia, S.A. v. Hall</u>, 466 U.S. 408, 416 (1984). TTI asserts that the Court has specific jurisdiction over Emulgen (D.I. 20 at 8), and therefore the Court will only consider the facts under a specific jurisdiction analysis.

### III. DISCUSSION

####    A.   <u>Delaware Long Arm Statute</u>

In support of its Motion, Emulgen contends that the totality of Emulgen's contacts with the state of Delaware do not reach the level required to assert jurisdiction under Delaware's long-arm statute. (D.I. 15 at 5). Specifically, Emulgen contends that the amount of revenue Emulgen has derived from Delaware, 0.0015 percent, is insufficient to confer personal jurisdiction. (<u>Id</u>. at 4). Emulgen further contends it did not target Delaware residents, because Emulgen's sales in Delaware were the result of a broadcast e-mail marketing campaign conducted by a third party, and Emulgen was unaware that Delaware residents would receive e-mails. (<u>Id</u>. at 4-5). Additionally, Emulgen contends that jurisdiction is improper under Delaware's long-arm statute because Emulgen has no offices, telephone listings, employees, bank accounts, advertising, personal or real property in Delaware, or any ongoing contracts with any Delaware customers.

(Id. at 4).

In opposition, TTI contends that Delaware's long-arm statute confers jurisdiction in this case. Specifically, under §3104(c)(1), TTI contends that Emulgen marketed and offered its product for sale to Delaware residents through a direct solicitation e-mail campaign, which resulted in the sale of Emulgen's products to Delaware residents, and through its interactive website. (D.I. 20 at 4). TTI contends that this conduct was part of a "general business plan," and constitutes "transacting business" under § 3104(c)(1). (Id.). TTI further contends that jurisdiction exists under § 3104(c)(3) because Emulgen committed the tort of patent infringement by offering to sell, and selling infringing products to Delaware residents. (Id. at 5).

In response, Emulgen contends TTI's claims of jurisdiction under § 3104(c)(1) are insufficient. With respect to the e-mail campaign, Emulgen contends it had no way of knowing how many e-mails were sent to Delaware residents since e-mail addresses have "no relevant, legal citizenship characteristics." (D.I. 23 at 4). Emulgen further contends that the "random transactions" resulting from the e-mail campaign do not rise to the level of "transacting business" in Delaware, that the purchases made by Delaware residents occurred outside Delaware, and shipments to Delaware by common carrier are insufficient to establish jurisdiction. (Id.)

6

Emulgen also contends that TTI presented no evidence that Emulgen's website was interactive, that it is not associated with the interactive websites cited in TTI's Opposition, and that no sales in Delaware were derived from Emulgen's website. (D.I. 23 at 1-2.)

Emulgen contends that the Court cannot assert personal jurisdiction under § 3104(c)(3) because the Federal Circuit's holding in Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994), that, "for purposes of patent law, the injury occurs where the product is sold," cited by TTI as authority for the proposition that Emulgen's infringement of TTI's patent occurred in Delaware, "deprives states of the ability to interpret their own statutes by supplanting federal law where state law otherwise should control." (D.I. 23 at 6). Emulgen contends that this approach contradicts the decisions of other Delaware courts interpreting similar factual circumstances in non-patent cases. (Id.)

The Delaware Supreme Court has construed the long-arm statute liberally to confer jurisdiction to the maximum extent possible in order "to provide residents a means of redress against those not subject to personal service within the State." Kloth v. Southern Christian University, 494 F.Supp.2d 273, 278 (D. Del. 2007) (quoting Boone v. Oy Partek Ab, 724 A.2d 1150, 1156-1157 (Del.Super. 1997)). The Delaware long-arm statute

7

provides, in relevant part:

> (c) As to any cause of action brought by any person arising from any of the act enumerated in the section, a court may exercise personal jurisdiction over any nonresident, or a personal representative, who in person or through an agent:
>
> (1)  Transacts any business or performs any character of work or service in the state;
> . . .
> (3)  Causes tortious injury in the State by an act or omission in this State;

Del. Code Ann. tit. 10 § 3104(c). The Delaware Supreme Court has interpreted §§ 3104(c)(1) and 3104(c)(3) as specific jurisdiction provisions that require a "nexus" between the plaintiff's cause of action and the conduct of the defendant used as a basis for jurisdiction. See LaNuova D & B, S.p.A v. Bowe Co., 513 A.2d 764, 768 (Del. 1986). To meet the requirements of §§ 3104(c)(1) and 3104(c)(3), Emulgen's conduct must have been directed at residents of Delaware and the protection of Delaware laws. Thorn EMI N. Am. Inc. v. Micron Tech., Inc. 821 F.Supp. 272, 274 (D.Del. 1993).

"Specific jurisdiction arises when a defendant has both purposefully directed its activities at residents of the forum state and the action arises from, or is directly related to, the defendant's actions within the forum state." Kloth, 494 F.Supp.2d at 279 (citing to Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). Under Delaware law,

> [w]here personal jurisdiction is asserted on a transactional basis, even a single transaction is

8

>sufficient if the claim has its origin in the asserted transaction. Thus if the claim sought to be asserted arose from the performance of business or the discharge of the contract, no further inquiry is required concerning any other indicia of the defendant's activity in the state. Similarly, where the claim is one for tortious injury under subsection (c)(3), a single 'act or omission' in the State in which the injury was caused will suffice."

LaNueva D & B, S.p.A, 513 A.2d at 768. See also Friedman v. Alcatel Alsthom, 752 A.2d 544, 549 (Del. Ch. 1999) ("single act done or transaction engaged in by the nonresident within the State is sufficient to establish jurisdiction.").

Section 3104(c)(3) requires that an act be committed in Delaware, and that the injury occur in Delaware. Applied Biosystems, Inc. v. Cruachem, Ltd., 772 F.Supp. 1458, 1468 (D.Del. 1991). Emulgen contracted with a third-party to conduct a national e-mail marketing campaign, intending to reach the entire United States through individual's e-mail in-boxes. As a result of this nationwide campaign, Emulgen received orders from Delaware residents, and delivered its products to Delaware. There is no evidence in the record that Emulgen attempted to limit its e-mail marketing campaign or shipment of its product to certain states only.

The Federal Circuit has held that, in patent infringement actions, a patentee's injury occurs where the product is sold.[2]

---

[2] The patents owned by TTI are property interests created and defined by federal law. Horne v. Adolph Coors Co., 684 F.2d 255, 259 (3d Cir. 1982). "Even when applying a state long-arm statute, it is appropriate to look to federal law for purposes of determining the situs of the "tort" of patent infringement, because an action for patent infringement is not truly a tort but

9

Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570 (Fed. Cir. 1994). In light of this decision, Emulgen's use of the internet as a marketing tool and its decision to contract with a third-party to market its product through a nationwide e-mail broadcast are sufficient to establish specific jurisdiction, particularly in light of the Delaware Supreme Court's decision that Delaware's long arm statute should be applied to provide residents a means of redress. Accordingly, the Court concludes that it has jurisdiction over this matter under § 3104(c)(3).

B.  Due Process

Having determined that the Court has jurisdiction over Emulgen under Delaware law, the Court must now determine whether the assertion of jurisdiction under § 3104 comports with federal due process. "Due process requires that sufficient minimum contacts exist between the defendant and the forum state to satisfy traditional notions of fair play and substantial justice." Thorn EMI North Am., Inc. v. Micron Tech., Inc., 821 F.Supp. 272, 275 (D.Del. 1993)(quotations omitted). The purpose of this requirement is to ensure that "defendant's conduct and connection with the forum state are such that he should

---

rather a federally created and defined cause of action. North Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994) (considering situs of patent infringement to determine whether requirements of Illinois long-arm statute had been met)." Wing Shing Products (BVI), Ltd. v. Simatelex Manufactory Co., Ltd., 479 F.Supp.2d 388, 399 n.6 (S.D.N.Y. 2007).

reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 297 (1980). "Courts should also consider the burden imposed on the defendant by having to litigate in a foreign forum, as well as the interest of the plaintiff and the forum state." Thorn EMI, 821 F.Supp. at 275. Specific jurisdiction is proper where (1) a defendant has purposefully directed its activities at residents of the forum state, and (2) the alleged injuries arise out of those activities. Id. at 821 F.Supp. at 275-276 (citing to Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985).

TTI contends that the Court's exercise of jurisdiction over Emulgen is proper because Emulgen has purposefully targeted its marketing efforts, specifically, a direct solicitation e-mail campaign, and its interactive, commercial website, towards Delaware residents, and these efforts resulted in sales to residents of Delaware. In response, Emulgen contends that its e-mail solicitation campaign did not directly target Delaware residents, since e-mail addresses cannot be tied to a specific geographical location, no orders were procured by the website, which Emulgen further contends is non-interactive, and finally, the sales resulting from the e-mail campaign were *de minimus*.

The Court finds that Emulgen purposefully directed its activities at Delaware residents. As discussed above, Emulgen contracted with a third party to conduct a nationwide e-mail

11

solicitation campaign without geographical restriction, and, as a result, Emulgen received orders from and shipped orders to Delaware residents. "The law is clear that, where a defendant infringer is shown to have sold the allegedly infringing product in the forum state, the forum may exercise personal jurisdiction over defendant." Osteotech, Inc. v. Gensci Regeneration Sciences, Inc., 6. F.Supp.2d 349, 354 (D.N.J. 1998) (citing Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558, 1570-71 (Fed. Cir. 1994) and North American Philips Corp. v. American Vending Sales, Inc., 35 F.3d 1576, 1578-79 (Fed. Cir. 1994)).[3]

The Court is not persuaded by Emulgen's contention that the sales relied upon by TTI are *de minimus*, and thus insufficient to establish specific personal jurisdiction. TTI's alleged injuries

---

[3] See also Netalog, Inc. v. Tekkeon, Inc., No. 05-CV-00980, 2007 WL 534551, at *3 (M.D.N.C. Feb. 15, 2007) (finding that defendant purposefully directed activities at the forum based on one sale of allegedly infringing product to a North Carolina resident); Precimed S.A. v. Othrogenesis, Inc., No. 04-1842, 2004 WL 2630596, at *2 (E.D.Pa. Nov. 17, 2004) (stating:
> Because a state has an interest in preventing the importation of infringing products, patent infringement occurs in the state where infringing sales are made. When it sells its products in a state, the alleged infringer has fair warning that it can be sued there. Thus, if a plaintiff establishes that a defendant sold the accused product in the forum state, personal jurisdiction is proper there because the sale of an infringing article to a buyer in that state is deemed tortious conduct within the meaning of long-arm statute.)

due to infringement of the patents at issue arose from Emulgen's directed activity. Because Emulgen's forum-related conduct forms the basis of the injuries alleged by TTI, Emulgen's contacts do not need to be continuous and substantial. Osteotech, Inc., 6 F.Supp.2d at 354.

The Court further concludes that litigating in Delaware would not substantially burden Emulgen so as to "offend traditional notions of fair play and substantial justice." Thorn EMI, 821 F.Supp. at 276. Emulgen contends that its revenues are not sufficient to employ two lawyers required to defend this action in Delaware, and that its attempts to hire Delaware counsel have resulted in conflicts since many Delaware patent and trademark attorneys are "employed by the law firm that represents Tristrata." (May 15, 2007 Banerjee Aff.)

However, Emulgen has not presented any evidence in support of these contentions, and, based on its filed pleadings, Emulgen has seemingly been able to acquire non-conflicted Delaware counsel. TTI's interest in obtaining convenient and effective relief in its home forum, Delaware's interest in protecting the property rights of its residents, and finally, the judicial system's interest in the efficient resolution of TTI's claims against Emulgen and its co-defendants in a single action before this Court beg the Court's conclusion that the assertion of personal jurisdiction over Emulgen will comport with fair play

and substantial justice.

Accordingly, the Court will deny Emulgen's Motion To Dismiss (D.I. 14) to the extent it requests dismissal for lack of personal jurisdiction.

**IV.  VENUE**

In the alternative, Emulgen seeks transfer of this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) as a matter of convenience to the parties. (D.I. 15 at 7.) Emulgen contends that a transfer is warranted because Emulgen's principals and agents are in Illinois, and, because Emulgen's resources are limited, maintenance of this action in Delaware would limit Emulgen's ability to present its case.  Emulgen argues that TTI has no legitimate reason to maintain this action in Delaware, other than Delaware is TTI's "home turf." (Id.) In response, TTI contends that Emulgen has not demonstrated that the Northern District of Illinois is "clearly more convenient" or that transfer would serve the interests of justice.  TTI contends that the District of Delaware's substantial ties to TTI and the events giving rise to this lawsuit, the location of TTI's witnesses in and around Delaware, including two elderly witnesses for TTI who would be severely burdened by travel to Illinois, and this Court's experience presiding over litigation of the patents at issue all favor the Court's denial of Emulgen's motion to transfer.

14

In determining whether to transfer a case pursuant to § 1404(a), courts in the Third Circuit apply the public and private interest factors outlined in <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873 (3d Cir. 1995). With regards to the private interests, courts consider: (1) the plaintiff's choice of forum; (2) the defendant's preferred forum; (3) where the claim arose; (4) the convenience of the parties; (5) the convenience of the witnesses, but only to the extent that the witnesses may be unavailable for trial in one of the fora; and (6) the location of books and records, again, only to the extent that they may not be available in one of the fora. <u>Id</u>. at 879. With regard to the public interests, courts consider: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easier, quicker, or less expensive; (3) court congestion; (4) local interest in the controversy; (5) public policies of the fora; and (6) the trial judge's familiarity with the applicable state law. <u>Id</u>. at 879-80.

> A. <u>Whether TTI's Choice Of Forum Is Entitled To "Paramount Consideration"</u>

The Plaintiffs' choice of forum is entitled to "paramount consideration." <u>Shutte v. Armco Steel Corp</u>., 431 F.2d 22, 25 (3d Cir. 1970). This choice should not be lightly disturbed, because a corporation's decision to incorporate in a particular state is a rational and legitimate reason to choose to litigate in that state. <u>Stratos Lightwave, Inc. v. E20 Communs., Inc.</u>, 2002 U.S.

15

Dist. LEXIS 5653 at *7 (D. Del. 2002).

TTI is incorporated in Delaware, and therefore, the Court gives "paramount consideration" to TTI's decision to file this action in Delaware. Because this factor deserves paramount consideration, Emulgen must demonstrate that the Jumara factors strongly favor a transfer to New York.

B. Whether The Private Interests Strongly Favor Transfer

The Court concludes that the private interests do not strongly favor transfer. Emulgen's witnesses and documents may be located in Illinois, but TTI's documents and witnesses are located in and around Delaware. Therefore, transfer of this action would result in TTI being put to the same inconvenience which Emulgen contends necessitates a transfer in its favor, and would not be a transfer in the interest of justice. Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, 136 F.Supp. 508, 511 (D.Del. 1955). Further, while Emulgen contends that it will be financially burdened by having to litigate this case in Delaware, Emulgen does not contend that any witnesses or records will be unavailable in Delaware.

C. Whether The Public Interests Strongly Favor Transfer

The Court concludes that the public interests do not favor transfer. While any judgment would have to be enforced in Illinois, Emulgen's other contentions in favor of transfer are unpersuasive. There is no strong local interest in litigating

this action in Illinois because patent issues do not give rise to a local controversy or implicate local interests. Further, the Court is familiar with the subject matter of this lawsuit through prior litigation, a factor that weighs against transfer of this action. In sum, the Court concludes that Emulgen has failed to demonstrate that the <u>Jumara</u> factors weigh strongly in favor of transfer, and therefore, the Court will deny Emulgen's Motion to Transfer (D.I. 8).

## V.   CONCLUSION

In sum, Emulgen's Motion To Dismiss And, In The Alternative, Motion To Transfer Venue (D.I. 14) is **DENIED**.

An appropriate Order will be entered.